Sieber vs. Amunson.

SIEBER, by guardian *ad litem*, Respondent, vs. AMUNSON, Appellant.

*January 19 — February 3, 1891.*

*(1) Accord and satisfaction: Joint tort-feasors.   (2) Evidence: Impeaching witness.*

1. The defendant, while riding in a sleigh with a driver, by yelling and whooping frightened the horses and they ran away and collided with a cutter in which the plaintiff was, overturning it and injuring her. The driver of the sleigh was not at fault. Plaintiff's attorney, in conversation with the driver and his employer, admitted that the driver was not liable for the injury, but told them that the plaintiff was needy and asked if they could help her. The employer handed the attorney $5, and it was agreed that $50 which he owed the driver should be paid to the plaintiff, but it never was so paid. *Held,* that there was no settlement or accord and satisfaction which would bar the action. Even if the $50 had been paid it would have been a mere gratuity, the driver not being a joint wrong-doer with the defendant.

2. Defendant's attorney asked the driver, as a witness, whether he had ever been arrested for fast driving at the city in which the accident occurred, and offered to prove that at a certain time he had pleaded guilty to a violation of an ordinance of the city against fast driving. *Held,* that both the question and the offer were properly excluded, the former not being sufficiently definite to lay the foundation for the introduction of the record to contradict the witness if he had answered in the negative.

APPEAL from the Circuit Court for *Jackson* County.

Action to recover damages for personal injuries alleged to have been sustained by the plaintiff on January 1, 1889, by reason of the defendant having "improperly, negligently, wilfully, and wrongfully shouted, hallooed, yelled, and whooped," thereby frightening the horses attached to the sleigh in which he was riding, so that they ran away and collided with the cutter in which the plaintiff was, overturning such cutter and severely injuring the plaintiff. The facts will sufficiently appear from the opinion.

For the appellant there was a brief by *Castle & Waldo,*
and oral argument by *G. E. Waldo.*

For the respondent there was a brief by *Perry & Brackett,*
and oral argument by *G. M. Perry.*

ORTON, J.    The plaintiff was riding in a cutter drawn by
a span of horses, with one Henry Helbling, the owner and
driver.    The defendant was riding in a bob-sleigh drawn
by a span of horses owned by one Jonas Narracong, with
one John Johnson Sieverson, his driver and hired man, be-
hind and following after the said cutter.    The defendant,
being somewhat intoxicated, hallooed, yelled, and whooped,
by which the team was frightened and ran away, and the
said Sieverson, the driver, lost all control of them, and, as
they ran and were passing the said cutter, they collided with
it in such a way as to turn it over, and the plaintiff was thrown
violently on the ground and seriously injured.    The jury
found the plaintiff's damages at $700, and this appeal is
from the judgment.

(1) The first assignment of error is that the verdict is
against the law and the evidence.    There was testimony
which would have warranted the jury in finding that the
whooping and yelling of the defendant frightened the team
and caused them to run away, and bring the two vehicles
into collision, and turn over the cutter, and thereby caused
the plaintiff's injury, and that is sufficient.    This court can
go no further into the merits of the case than to inquire
whether there is any evidence to sustain the verdict.    The
credibility and weight of the evidence are with the jury.
*Bierbach v. Goodyear Rubber Co.* 54 Wis. 213.    The wrong-
doer is liable for the damages he may cause by his miscon-
duct.    3 Suth. Dam. 714; *McNamara v. Clintonville,* 62
Wis. 213.

(2) The learned counsel of the appellant asked the witness
Sieverson if he was ever arrested for fast driving at Black

River Falls, and then offered to prove that the witness pleaded guilty to the violation of an ordinance of that city against fast driving, before a justice of the peace, on the 4th day of January, 1889. The question and offer were objected to, and the objection sustained. The only purpose of the question and offer must have been to impeach the witness by a contradiction, for he was not a party to the suit whose statements and acts could be proved. Therefore it was necessary to lay the foundation for such a contradiction by first asking the witness if such an event occurred at a certain time and place, and the particulars thereof, so as to apprise the witness of just what they sought to show. If he then denies it, it may be proved precisely as it is stated in the question, and not otherwise. The witness should have the privilege of admitting it just as it occurred. The rule is a familiar one, and unquestionable. *Hinton v. C. C. R. Co.* 65 Wis. 323; 1 Greenl. Ev. § 462. The question asked was not a sufficient foundation for the introduction of the record to contradict the witness, if he had answered it in the negative.

(3) The defendant stated in his answer that the plaintiff had received compensation from John Johnson Sieverson for all injuries sustained by her by reason of the overturning of the cutter at that time, and in full settlement therein. To sustain this defense it must appear that John Johnson Sieverson was a joint tort-feasor with the defendant, and that as to him there had been accord and satisfaction. There was no proof that John Johnson Sieverson did anything to make his team run away, except about the time or before the whooping and yelling of the defendant he had struck his horses with a whip, and it does not appear that such stroke of the whip caused them to run away. This fact rests upon the testimony of the defendant, and was denied by Sieverson. The facts about the pretended settlement were in substance as follows: Mr. Perry, one of

the counsel of the plaintiff, had an interview with Sieverson in the presence of Jonas Narracong, the owner of the team, and questioned him as to what would be his testimony on the trial. Incidentally he stated that the plaintiff was very poor and needed assistance, and that he rendered his services gratuitously, and that it was doubtful whether the defendant was worth anything, and asked. them if they could help her. He said that he was satisfied that Sieverson was not in fault. Whereupon Narracong handed Mr. Perry $5, and asked Sieverson if he could do anything for her, and he said he would if he was able to do so. Narracong told him that he owed him $50, and he would pay her that if he was wiiling, and he seemed to assent to the proposition. This was on Sunday. Only the $5 paid by Narracong at that time was ever paid. The plaintiff knew nothing about this proposition or what took place at that time.

Narracong, as a witness, speaks of this transaction as a settlement, but it could not have been a settlement or an accord and satisfaction, for Mr. Perry not only had not charged and did not charge Sieverson with being guilty of any wrong or with any liability on account of the plaintiff's injury, but expressly told him that he did not believe him to be liable or to have been in any fault. There was no consideration whatever for the promise to pay anything to the plaintiff or for her benefit, and it was void for that reason, if not for having been made on the Sabbath.

The court instructed the jury that there was no accord and satisfaction, because there was no satisfaction. As an abstract proposition this was correct. The legal meaning of an accord is that " it is a satisfaction agreed upon between the party injuring and the party injured, *which*, *when performed*, is a bar to all actions on this account." " It must be advantageous to the creditor, and he must receive an actual benefit therefrom." " Everything must be done

Sieber vs. Amunson.

which the party undertakes to do." 2 Greenl. Ev. 28; 3 Bl. Comm. 15; Bouv. Law Dict. tit. "Accord," and cases cited; *Ogilvie v. Hallam*, 58 Iowa, 714; *Evans v. Wells*, 22 Wend. 325. "An accord not followed by a satisfaction is no bar." *Palmer v. Yager*, 20 Wis. 91; *Barnes's Adm'r v. Lloyd*, 1 How. (Miss.), 585. "To constitute a good accord and satisfaction, it must be accepted as such." This was neither an accord and satisfaction, nor a settlement of the matter, either in fact or in law. But, if the $50 had been actually received by the plaintiff, it would have been a mere gratuity. Mr. Perry no doubt understood the effect of the transaction to be a mere act of charity or benevolence, or a loan. The idea of an accord and satisfaction of the cause of action in this suit probably never entered his mind. As an attorney of the plaintiff in this action, he had no power, unless specially authorized, to make any contract or do anything by which the action would be barred.

We find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.