[No. 13223.   Department One.   December 5, 1916.]

## S. J. RANDALL, *Appellant*, v. JOHN GERRICK *et al.*, *Respondents.*[1]

RELEASE AND DISCHARGE—PARTIAL RELEASE—DISCHARGE OF PARTY NOT LIABLE—EFFECT.   While a satisfaction of a wrong by one not in fact liable operates as a release of the actual wrongdoer, a party may, for a consideration, release one not liable without releasing the wrongdoer, if the consideration was not in fact accepted as a satisfaction for the injury; there being a distinction between a release and a satisfaction.

SAME—PARTIAL SATISFACTION—INTENTION.   Where an action for personal injuries was brought by an employee against a railroad company and an independent contractor for whom plaintiff was working, and upon voluntarily paying a small sum to avoid costs, the railroad company was dismissed because it was found that it was not liable as a joint tort feasor, the payment from the company does not release the independent contractor, as it was not intended as even a partial satisfaction of the damages.

PARTNERSHIP—RELATION—EVIDENCE — QUESTION FOR JURY.   In an action against the firm of G. & G. for personal injuries, the relation of defendant J. as a partner is a question for the jury, although defendants denied that he was a member of the firm, where there was evidence that he hired the plaintiff, looked after part of the work, at one time paid the plaintiff for work and stated that he was interested in the firm, and when, in the course of a year, the firm organized as a corporation, he became the president of the corporation.

Appeal from a judgment of the superior court for King county, Ronald, J., entered May 12, 1915, in favor of the defendants, notwithstanding the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a riveter in bridge construction.   Reversed.

*John F. Miller, John T. Casey,* and *Heber McHugh,* for appellant.

*McClure & McClure* and *Milo A. Root,* for respondents.

[1]Reported in 161 Pac. 357.

FULLERTON, J.—On October 25, 1910, S. J. Randall, while working for Gerrick & Gerrick as a riveter on a steel bridge in course of construction for the Great Northern Railway Company, was injured in his right eye by a chip or sliver of steel which flew from the end of a riveter. He brought suit for damages against the Great Northern Railway Company, and against John Gerrick, Joseph Gerrick, and H. W. Jack, claiming that these individuals constituted the firm of Gerrick & Gerrick, his employers. After the action had been brought, and after a continuance had been had at the instance of the defendants, the following stipulation was entered into with the defendant railway company:

"It is hereby stipulated by and between the plaintiff and the defendant Great Northern Railway Company, by their respective attorneys, that the cause of action set forth in the complaint herein against the defendant Great Northern Railway Company, has been compromised and settled and the full amount of said compromise and settlement has been paid by said defendant to plaintiff, and it is further stipulated that the above action may be dismissed as against said defendant Great Northern Railway Company and that judgment of dismissal against said company may be entered of record with prejudice to the commencement of another action and against said Great Northern Railway Company for the same cause, and without further costs to either party."

The railway company was thereupon dismissed as a defendant in the case, and an amended complaint filed on October 14, 1914, against the Gerricks and Jack. On April 2, 1915, a second stipulation was entered into between Randall and the railway company in the following terms:

"It is hereby stipulated and agreed that on or prior to the 15th day of May, 1914, the defendant above named through F. G. Dorety, its counsel, had advised plaintiff's attorney that plaintiff had not been in the employ of the defendant at the time of receiving the alleged injuries referred to in the complaint in this action but had nevertheless offered to pay plaintiff the sum of one hundred dollars ($100) in order to avoid

the expense of trial, and particularly of bringing a witness from St. Paul, and that on the date last above mentioned, plaintiff's attorney advised defendant's attorney that plaintiff was unwilling to make any settlement or compromise that would affect any other party to this action and that the sum of one hundred dollars ($100) was not considered as a reasonable or adequate allowance for plaintiff's injuries or as any more than a nominal payment, but that plaintiff had not much hope of being able to prove that he had been in the employment of the Great Northern Railway Company at the time of said accident, and would therefore discontinue and dismiss said action against said Great Northern Railway Company in consideration of said payment of one hundred dollars ($100) and that thereupon defendant paid said sum of one hundred dollars ($100) to plaintiff and that the stipulation of dismissal now on file was thereupon executed, and defendant consents that the stipulation and order of dismissal heretofore filed herein may be modified and amended so far as necessary to accord to the foregoing fact."

Upon this stipulation, the court made the following order:

"It appearing satisfactorily to the court that the above named defendant the Great Northern Railway Company is not a proper or necessary party to the above cause for the reason that the plaintiff was not employed by or on behalf of said Great Northern Railway Company, and it further appearing to the court that the plaintiff was employed by the other defendants only, and that said railway company was made a defendant by mistake; and it further appearing to the court that there is no dispute or issue between the said plaintiff S. J. Randall and the said defendant Great Northern Railway Company, and that the above cause may be discontinued and dismissed as to said defendant, it is hereby

"Ordered, that the stipulation and order of dismissal entered thereon, in the above cause on the 15th day of May, 1914, be and the same is hereby vacated, annulled, set aside and held for naught, and it is further

"Ordered, that the above cause may be, and hereby is discontinued and dismissed against said defendant Great Northern Railway Company, and without costs to plaintiff or said defendant for the foregoing reason, and without prejudice to

the plaintiff pursuing, and maintaining said cause of action against the other defendants."

On April 15, 1915, the cause came on for trial, and respecting the issue as to one joint tort feasor having been released by Randall, there was the following testimony by Mr. Dorety, attorney for the Great Northern Railway Company:

"We did not consider there was any liability because the plaintiff was not working for the Great Northern Railway Company. We settled with him to avoid costs and not to avoid liability. I informed Mr. Casey, the plaintiff's attorney, that there was no liability on our part, but that we would have to send to St. Paul for a witness unless we were dismissed from the case, and that would probably cost $100 to bring the witness out; that we would rather pay that amount than to go through the form of a trial."

Randall himself testified on this point as follows:

"I do not recall just what I said to Mr. Dorety, but before I started this action defendants would not give me any information in regard to their relations with the Great Northern Railway Company. My impression was that the Great Northern Railway Company had something to do with the work. After talking with Mr. Dorety I became satisfied that I was not working for the Great Northern Railway Company at all. It was a voluntary offer on their part to pay the hundred dollars and some witness fees; and we accepted it, not as a settlement of the case, but to avoid putting the railway company to the expense of bringing a witness from St. Paul."

The release between plaintiff and the railway company and the original stipulation founded thereon had been offered in evidence, but rejected on the ground that the answer of the Gerricks admitted the employment of plaintiff by themselves. The evidence also showed that plaintiff was not working for the railway company; that Gerrick & Gerrick employed and paid him.

There was contradictory evidence upon the issue as to whether Jack was a member of the firm of Gerrick & Gerrick.

Defendants challenged the sufficiency of the evidence, both when plaintiff rested his case and at the close of all the evidence, but the motions were overruled; the court intimating, however, that if the jury should find a verdict against Jack, he would be inclined to set it aside, or grant a motion for judgment in favor of Jack notwithstanding the verdict. The case was submitted to the jury, and a verdict of $2,500 returned against all of the defendants. Defendants thereupon moved for judgment *non obstante veredicto,* which was sustained and judgment of dismissal entered as to all the defendants, from which judgment this appeal is taken.

It is the settled rule in this state that the acceptance of money in satisfaction of a claim against one joint tort feasor, even with a reservation that it is not to be considered as a release of another joint tort feasor, operates to release the latter. *Abb v. Northern Pac. R. Co.,* 28 Wash. 428, 68 Pac. 954, 92 Am. St. 864, 58 L. R. A. 293. The question here is whether the facts of the present case bring it within the rule. We think it presents two elements that distinguish it; first, that the defendant dismissed from the action was not liable as a joint tort feasor; and second, that the payment made by the dismissed party was in no sense intended by the parties to be applied in satisfaction of the injury to appellant. There seems to be no question other than that respondents were working under an independent contract with the railway company. Respondents employed and paid appellant, and no relation of master and servant existed between him and the railway company. No act or neglect on the part of the railway company contributed to his injury. The injury resulted solely from the negligence of the persons who were his sole and immediate employers. While the authorities maintain the principle that a satisfaction of a wrong by one not in fact liable will operate as a release of the actual wrongdoer (*Martin v. Cunningham, ante* p. 517, 161 Pac. 355), the better doctrine also recognizes the right of a party

wronged to release one not liable without releasing the wrongdoer, although it may be done for a consideration, if the consideration has not in fact been accepted as a satisfaction for the injury. *Sieber v. Amunson*, 78 Wis. 679, 47 N. W. 1126; *Wardell v. McConnell*, 25 Neb. 558, 41 N. W. 548; *Kentucky & I. Bridge Co. v. Hall*, 125 Ind. 220, 25 N. E. 219; *Missouri, K. & T. R. Co. v. McWherter*, 59 Kan. 345, 53 Pac. 135; *Wagner v. Union Stock Yards & Transit Co.*, 41 Ill. App. 408; *Western Tube Co. v. Zang*, 85 Ill. App. 63; *Thomas v. Central R. Co.*, 194 Pa. St. 511, 45 Atl. 344; *Atlantic Dock Co. v. Mayor etc. of New York*, 53 N. Y. 64; *Iddings v. Citizens' State Bank*, 3 Neb. (Unof.) 750, 92 N. W. 578; *Mathews v. Lawrence*, 1 Denio 212, 43 Am. Dec. 665.

It is true there is a respectable line of authority in support of the contrary doctrine, but we believe the view we have adopted is more in consonance with reason and equity. Even the cases holding to the contrary of the doctrine draw a distinction between a technical release and a satisfaction, basing their decision on the fact that it is the "satisfaction" of a claim by one not liable which releases the wrongdoer, and that a technical or partial release may not so operate. The distinction is stated in *Miller v. Beck & Co.*, 108 Iowa 575, 79 N. W. 344, as follows:

"It is important that we distinguish in this connection between what the law denominates a 'release' and what is called a 'satisfaction.' A release may be given, although no part of the damage has been paid, and a technical release to one who is not a joint wrongdoer will not necessarily release another, who may have had some connection with the wrong. See, as illustrating this rule, *Ellis v. Esson*, 50 Wis. 138, 6 N. W. 518 [36 Am. Rep. 830]; *City of Chicago v. Babcock*, 143 Ill. 358, 32 N. E. 271; *Long v. Long*, 57 Iowa 497, 10 N. W. 875; *Knapp v. Roche*, 94 N. Y. 329; *Turner v. Hitchcock*, 20 Iowa 310. A satisfaction, however, by whomsoever made, if accepted as such, is a bar to further proceedings on the same cause of action."

A further reason why respondents were not released by the payment received from the railway company is that it cannot possibly be construed as intended for even a partial satisfaction of the claim for damages. After discovery that there was no liability on the part of the railway company, it was agreed to dismiss the action as to them, the company voluntarily agreeing to donate $100 rather than be put to the expense and delay of bringing a witness from St. Paul, Minnesota, to establish its nonliability. There was no meeting of minds on the subject of satisfaction, but rather one on the matter of costs and expenses, which the company wished to avoid. We do not think the rigor of the rule announced in the *Abb* case is applicable to such a situation. In that case, a satisfaction with one joint tort feasor was entered into. Here there is an agreement with a stranger to the case, so far as liability is concerned, who pays a small sum, not intended by the parties as a satisfaction of any pretended liability, but for the purpose of allowing such stranger to clear its docket of a pending case whose trial might occasion it vexation and annoyance, but which would not result in subjecting it to damages. The tendency of the courts now is, in cases of joint tort feasors, to allow it to be shown that a payment made by one wrongdoer was not intended as a satisfaction of the claim against him, and the rule should concededly be more liberal in case of a payment by a stranger to the liability. See *Sloan v. Herrick*, 49 Vt. 327. Further, the agreement in this case, instead of being construed as a release, would fall more nearly under the category of a covenant not to sue, which, by the weight of authority, is not deemed to release a joint tort feasor, provided no payment is made which partakes of the character of a satisfaction of the claim. *Chicago v. Babcock*, 143 Ill. 358, 32 N. E. 271.

In view of the fact that the release in this case ran to one who was not liable as a tort feasor, and that the payment made by such released party was made on other grounds than that of a satisfaction of the assumed claim

against it, we are constrained to hold that such payment did not operate as a release of the real wrongdoer.

The only remaining question is as to the liability of Jack as a partner in the firm of Gerrick & Gerrick. The Gerricks and Jack testified there was no such relationship, that Jack occupied the office adjoining them and looked after some matters in their absence. As controverting this, appellant and another witness testified that Jack hired them to go upon the bridge job where the injury occurred; that he was up there to look at the work; that a check given by Gerrick & Gerrick to appellant could not be cashed and Jack substituted his personal check and told appellant that he was interested in the firm. The evidence further shows that, in the course of the year following the injury, the firm of Gerrick & Gerrick was organized into a corporation, of which Jack became the president. We think the evidence was sufficient to present a question to the jury as to whether Jack was in fact a partner in the firm of Gerrick & Gerrick at the time of appellant's employment and injury. *Providence Mach. Co. v. Browning*, 68 S. C. 1, 46 S. E. 550; *In re Beckwith & Co.*, 130 Fed. 475.

The judgment notwithstanding verdict is reversed, with instructions to the trial court to enter judgment on the verdict.

MOUNT, ELLIS, and CHADWICK, JJ., concur.