[No. 14977.   Department Two.   December 9, 1918.]

S. J. RANDALL, *Respondent*, v. JOHN GERRICK *et al.*,
*Appellants*.[1]

MASTER AND SERVANT (145, 155) — INJURY TO SERVANT — NEGLI-
GENCE—SAFE TOOLS—SUFFICIENCY OF EVIDENCE.  Where a steel "snap"
for heading rivets, with a soft end, was taken to the blacksmith by
the foreman, and there was evidence that it was tempered on its
return, and broke and injured the plaintiff on the first blow of the
hammer, there was sufficient evidence to go to the jury on the
question of whether the soft end had been tempered by the black-
smith.

SAME (90, 99)—ASSUMPTION OF RISKS—SIMPLE TOOLS—NOTICE.
While a steel "snap" for heading rivets with a soft end for striking
is a simple tool, when the foreman took it to the blacksmith to
change the cup end, and had it hardened at the hammer end and
made dangerous, it was his duty to notify the riveting crew; and
plaintiff, injured when it broke at the first blow of the hammer,
did not assume the risk, and was not required to make a careful
examination to see if it was safe; there being evidence that the
defect was not apparent from casual observation.

APPEAL (473)—REVIEW—SUBSEQUENT APPEALS—LAW OF CASE.  A
decision on a former appeal that one J. was not a partner of a firm
is the law of the case and conclusive upon a second appeal.

Appeal from an order of the superior court for King
county, Ronald, J., entered April 1, 1918, denying a
new trial, in an action for personal injuries sustained
by a riveter in bridge construction.   Affirmed.

*Kerr & McCord*, for appellants.

*John F. Miller, Heber McHugh*, and *John T. Casey*,
for respondent.

MOUNT, J.—The plaintiff brought this action against
the defendants, and after issue joined and upon a trial
to a jury, a verdict for twenty-five hundred dollars
was rendered in favor of the plaintiff.   On motion of
the defendants, a judgment *non obstante* was entered

[1]Reported in 176 Pac. 675.

in their favor. The plaintiff appealed from that judgment to this court. On that appeal, the judgment was reversed, and the cause remanded with instructions to the trial court to enter a judgment upon the verdict. The decision of this court will be found in 93 Wash. 522, 161 Pac. 357, L. R. A. 1918D 179. Thereafter the trial court entered a judgment upon the verdict, and in due course the defendants filed a motion for a new trial, which was denied by the trial court. This appeal by the defendants followed.

It appears that, on October 25, 1910, the respondent, while working for Gerrick Brothers, as a riveter, on a steel bridge in the course of construction, was injured in his right eye by a chip or sliver of steel which flew from the end of a riveter, which is called in the record "a snap." This snap is a piece of steel with a cup in one end. The other end is of soft steel, the cup end being tempered. This snap is used for the purpose of making heads upon rivets. The cup end of the snap is placed over the heated rivet and is held in place by one man, while another man, with a sledge hammer, strikes the snap and thus forms a head on the rivet.

The respondent was an experienced structural iron worker and riveter and, at the time of the accident, was holding the snap. Several rivets had been headed by the riveting crew, when the foreman noticed that the heads of the rivets were cone shaped, and insisted that the heads of the rivets should be formed in what is called a "button" shape. He directed the riveting crew to have the snap changed from a cone shape to form a button shaped head. This snap was taken by the foreman to a blacksmith shop, and the cup therein was changed from a cone shape to a button shape. The soft end, or sledge hammer end, was also changed by having the burr, which had formed thereon by con-

stant use, which is common, trimmed off, so that there was no burr upon that end of the snap. When the snap was returned by the foreman to the riveting crew, they proceeded to again use the snap. The first blow of the sledge hammer upon the hammer end of the snap caused the snap to break and a piece from it to strike the respondent in the eye, thereby injuring him.

The contention of respondent at the trial was that the appellants were bound to furnish reasonably safe tools, and that they failed by furnishing a snap that was dangerous, in that it was tempered on the hammer end. The other facts necessary to an understanding of the case are stated in the opinion referred to in 93 Wash. 522, 161 Pac. 357, L. R. A. 1918D 179, *supra*.

It is now contended by appellants: First, that the tool used was a simple tool, and that the respondent assumed whatever liability there was of splinters flying from the head of the tool when it was struck by the sledge hammer. The respondent maintained, at the trial of the case, that the appellants negligently permitted the whole tool to be tempered, so that, when struck by the sledge hammer, it would chip and break, while the ordinary tool of that character should have a soft, untempered head upon the end struck by the sledge hammer, so that, when struck, it would spread rather than break; and that, by reason of the fact that it was permitted to be tempered by the blacksmith who changed the tool, without notice to the crew that was required to use it, this was negligence.

The appellants contend that there was no evidence sufficient to go to the jury that the tool, when it was returned by the foreman to the respondent, had been tempered; but from the evidence, as we read it, there was sufficient to go to the jury upon that question. While there was no direct and positive evidence that

the blacksmith who changed the tool actually tempered the hammer end of it, the evidence tends to show that it was tempered and that, upon the first blow of the hammer, it actually did break. There was also evidence on behalf of the respondent that a casual observation of a tool of that character would not disclose that it was tempered hard at the hammer end. This evidence was disputed by the appellants, and testimony was offered to the effect that a casual observation would disclose the fact that it had been tempered hard. We are satisfied, from reading the whole evidence, that this was a simple tool, but when the foreman upon the work took the tool to a blacksmith and had the tool tempered hard, without notice of that fact to the respondent, we think he was justified in relying upon the assumption that a safe tool was furnished to him. We think, from the whole evidence of the case, that the hammer end of this tool was tempered hard; that it broke by reason of that fact, and injured the respondent. We are also of the opinion that it was not the duty of the respondent to make a careful examination of the tool to determine whether it had been tempered hard or not. It was the duty of the foreman, knowing the fact, as he must have, that the tool had been tempered, to at least inform the respondent of that fact. This was not done, and there is no claim that it was done. There is some evidence in the record that the foreman himself had changed the tool, both at the tool end and at the hammer end. It was the duty of the foreman, under these circumstances to notify respondent of the fact that the hammer end had been tempered hard, because it is a conceded fact in the case that the hammer end of the snap is dangerous unless it is made of soft steel, untempered. The question of negligence was for the jury upon these facts.

The appellants further argue that the evidence shows that the appellant Jack was not a partner in the firm of Gerrick Brothers. This contention was urged on the other appeal, and upon that appeal we held that the evidence was sufficient to go to the jury upon that question. The decision upon the other appeal upon that question establishes the law of the case.

The judgment appealed from must therefore be affirmed.

MAIN, C. J., HOLCOMB, PARKER, and FULLERTON, JJ., concur.