[No. 15919.    Department One.    September 16, 1920.]

J. A. BETCHER, *Appellant*, v. J. N. KUNZ *et al.*,
*Respondents*.[1]

PLEADING (42)—ANSWER—INCONSISTENT DEFENSES. A general
denial of a fraudulent conspiracy is not inconsistent with an affirma-
tive defense of a release of damages.

RELEASE (6)—OPERATION AND EFFECT—JOINT TORT FEASORS. The
acceptance of a sum of money from one joint tort feasor in satisfac-
tion of a claim for damages and the execution of a release therefor
operates as a release of the other joint tort feasor.

SAME (6)—OPERATION AND EFFECT—EVIDENCE. A release of dam-
ages from the sale of a certain block of stock reciting that it releases
the seller from any and all further pecuniary liability for or on
account of the sale of any of the stock of the company covers a con-
spiracy in the sale of other stock, and is not confined to the particu-
lar stock sold.

EVIDENCE (179)—PAROL TO VARY WRITING—OPERATION AND EFFECT
OF RELEASE. The plain terms of an unambiguous release of damages
cannot be contradicted by parol testimony that the release was not
intended to include what the language expressly shows was included.

RELEASE (8)—VALIDITY—FRAUD—EVIDENCE—SUFFICIENCY. A re-
lease of damages should not be set aside for fraud where the parties
dealt at arm's length, were represented by counsel, and there was
no overreaching.

[1]Reported in 192 Pac. 955.

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered July 1, 1919, in favor of the defendants, upon withdrawing the case from the jury, dismissing an action for fraud. Affirmed.

*Ripley & Quackenbush,* for appellant.

*Oscar Cain, C. M. N. Love,* and *Merritt, Lantry & Merritt,* for respondents.

MAIN, J.—By the complaint, the defendants are charged with a conspiracy to defraud, and the plaintiff claims damages as a result thereof. In the answers, with one exception, which is not here material, after denying the fraudulent conspiracy, an affirmative defense was pleaded. The plaintiff replied to the affirmative matter in the answer. Upon the issues thus framed, the cause proceeded to trial before the court and a jury. At the conclusion of the trial, the court, upon motion of the defendants, withdrew the cause from the jury and entered a judgment dismissing the action. From this judgment, the plaintiff appeals. The facts necessary to present the questions to be decided upon this appeal may be summarized as follows:

Sometime during the month of May, 1917, the Oregon-Washington Automatic Speed Signal Company purports to have been organized as a corporation under the laws of the state of Washington, with its principal place of business at Harrington. Sometime later, probably during the month of June, the appellant purchased 10,000 shares of the capital stock, of the par value of $1 per share, then owned by G. A. Lanphere. In payment of this he gave his promissory note in the sum of $10,000. During the latter part of the year 1917 and the early part of the year 1918, the appellant purchased 5,000 shares more, but from another party,

and for this gave promissory notes which aggregated the sum of $5,000. On the 13th of April, 1918, the appellant went to a room in a hotel at Spokane with L. B. Simons and G. L. Rice, where he claims that they caused him to become drugged and intoxicated. In any event, on this occasion he signed three notes for $5,000 each. A few days later, Rice drove to his home in an automobile and there handed him 30,000 shares of the capital stock of the Oregon-Washington Automatic Speed Signal Company, saying to him, as appellant testifies:

"Here, Betcher, you have got a bunch of this stock and I have got this. It ain't ever going to do me any good. You might as well have this."

Rice immediately drove away and the stock remained in the possession of the appellant. A day or two after this the appellant discovered in his pocket a written memorandum of contract whereby Rice had agreed to sell him this stock. The notes were negotiated and passed into the hands of innocent holders. The appellant claims that the first he knew it was claimed he had signed any notes was when he heard from some of his friends that they were being offered for sale in the neighborhood of Waterville, where he formerly resided. On or about the 23d of June, 1918, the appellant employed an attorney, who proceeded with him from Spokane to the home of the respondent Lanphere, near Waterville, and entered into negotiations which resulted in the following writing:

"Exhibit '13.' In consideration of the surrender and return by G. A. Lanphere to Julius A. Betcher of his promissory note for ten thousand dollars, dated on or about June 27, 1917, and payable to the order of said G. A. Lanphere on or about October 15, 1918, with eight per cent per annum interest after such maturity of said note for the return by the said Julius A. Betcher to

said G. A. Lanphere of ten thousand shares of the capital stock of the Oregon-Washington Automatic Speed Signal Company, evidenced by stock certificate evidencing and representing said stock, and in addition thereto the payment of five hundred dollars this day made by said Julius A. Betcher to said G. A. Lanphere, the said Julius A. Betcher does hereby release the said G. A. Lanphere from any and all further pecuniary liability for and on account of or connected with the sale of any of the stock of said company to the said Julius A. Betcher. Julius A. Betcher. In the presence of L. J. Birdseye.''

This document will hereinafter be specially considered. Sometime during the month of September, 1918, the present action was begun, and, as already stated, charges a conspiracy to defraud. By the action the appellant sought to recoup his loss upon the stock that he had purchased and for which he had given notes other than the Lanphere stock. In the answer the defendants denied the charge of conspiracy to defraud and, as an affirmative defense, pleaded that the appellant, on or about June 24, 1918, made full and final settlement with Lanphere, who executed a release to him for and on account of any pecuniary liability on account of the sales of any stock in the corporation above mentioned. A copy of the release, which is the document above set out, was attached to the answers as an exhibit and made a part thereof. The appellant moved to strike the affirmative defense, which was denied. Thereupon he interposed a demurrer, which was overruled. The first error assigned relates to the ruling of the trial court upon the motion and demurrer.

If we have gathered the argument correctly, the theory of the appellant is that, since the respondents had denied in their answer the charge of fraudulent conspiracy, they could not plead affirmatively a release thereof without embodying in the affirmative defense

an admission of the conspiracy. This contention cannot be sustained. The respondents, in denying the conspiracy and pleading affirmatively a release, were not within the rule prohibiting inconsistent defenses. *Davis v. Seattle National Bank,* 19 Wash. 65, 52 Pac. 526; *Irwin v. Buffalo Pitts Co.,* 39 Wash. 346, 81 Pac. 349; *Irwin v. Holbrook,* 32 Wash. 349, 73 Pac. 360. In the case last cited, the rule is stated as follows:

"Defenses are inconsistent only when one in fact contradicts the other. Where there is only a seeming and logical inconsistency, which arises merely from a denial and the plea in confession and avoidance, such defenses are not held to be inconsistent."

The case of the *Seattle National Bank v. Carter,* 13 Wash. 281, 43 Pac. 331, 48 L. R. A. 177, relied on by the appellant, is not out of harmony with this rule.

The next question is whether the release by its language covers the conspiracy charged in the complaint. It is contended that the release only applies to the 10,000 shares of stock which was purchased from Lanphere, and does not apply to the conspiracy by which it is claimed the appellant was defrauded in the other two transactions. It is the law in this state, as held in *Abb v. Northern Pac. R. Co.,* 28 Wash. 428, 68 Pac. 954, 92 Am. St. 864, 58 L. R. A. 293, that the acceptance of a sum of money from one joint tort feasor in satisfaction of a claim for damages, and the execution of a release of such joint tort feasor of all damages by reason of the injuries inflicted, operates as a release of the other joint tort feasor, though the parties to the agreement may stipulate that the release of one shall not discharge the other. The rule of that case is restated in *Randall v. Gerrick,* 93 Wash. 522, 161 Pac. 357, L. R. A. 1918 D 179, as follows:

"It is the settled rule in this state that the acceptance of money in satisfaction of a claim against one

joint tort feasor, even with a reservation that it is not to be considered as a release of another joint tort feasor, operates to release the latter.''

It was held, however, that that case was distinguishable from the *Abb* case in that the defendant dismissed from the action was not liable in any event as a joint tort feasor, and that the payment made by the dismissed party was in no sense intended by the parties to be applied in satisfaction of the injury. Under the doctrine of those cases, the release would have the same effect upon the other charged conspirators that it had upon Lanphere, who, as already pointed out, is a party to this action. This brings us to the question whether the release, by its language, was intended to relieve Lanphere from any further liability on account of any purchases of stock other than that which had been purchased from him. Turning to the release, it will be seen that it contains a recital of the settlement by Lanphere with the appellant relative to the 10,000 shares of stock which had been previously purchased. After setting out the terms of the settlement, it provides that the appellant ''does hereby release the said Lanphere from any and all further pecuniary liability for and on account of or connected with the sale of any of the stock of said company to the said Julius A. Betcher.'' This language, it seems to us, unequivocally was intended to apply, and does apply, to any transactions with which Lanphere might have been connected relating to the sale of the stock of the Speed Signal Company to the appellant. The immediate transaction with Lanphere had been settled by the surrender of the note and the delivering up of the stock. There could be no further liability on account of that transaction. The language quoted is specific that Lanphere was released from ''any and all further'' pe-

cuniary liability for and on account of or connected
with the sale of "any" of the stock of said company.
The only other transactions, so far as the record dis-
closes, were the two stated in the complaint for which
the damages are sought.  There is no escape from the
conclusion that the language of the release covers the
transactions set out in the complaint and was so in-
tended at the time it was executed.  At this time the
appellant, according to his own testimony, knew that
he had been drugged and doped by certain of the de-
fendants in the $15,000 transaction which had occurred
more than two months prior, knew the manner in which
the 30,000 shares of stock had been delivered to him,
knew that, at about the same time, he found a contract
in his pocket which recited his purchase of his stock,
and knew, or it had been reported to him, that the
notes were floating around Waterville and being of-
fered for sale, and that the trustees, or some of them,
had sold their individual stock.  Prior to this time,
also, he had stated to one of the trustees of the com-
pany that, in his opinion, the stock was a fake.  The
appellant, at the time he executed the release, accord-
ing to his own testimony, must have had in mind the
facts last recited.  In the light of the facts thus ad-
mitted and the plain language of the release, it must
be held, as already indicated, that the release covers
the transactions alleged in the complaint.

The next question is whether oral testimony was ad-
missible for the purpose of showing that, at the time
the release was signed, it was not intended to cover
any transaction other than that of the purchase of the
Lanphere stock.  Upon the trial the appellant offered
to prove that the release did not cover, and was not
intended to include, any of the charges of fraud or con-
spiracy alleged in the complaint.  If this evidence is

admissible, then the language of the release may be contradicted by oral testimony. Some courts hold, and it may be the modern tendency, that oral testimony is admissible for the purpose of showing that the release of one joint tort feasor was not intended to apply to another. This rule is not applicable to the facts in this case, and, so far as we are informed, has not been applied in any case where the oral testimony would contradict the plain and unequivocal language of the written release. When the release was executed and delivered, it at once produced a certain legal effect, provided its terms are given their plain meaning. This result cannot be varied by oral evidence that the parties did not intend what the language expressly shows that they agreed to. The plain language of the release cannot be contradicted and set aside by oral testimony. *Brown v. Cambridge,* 85 Mass. 474; *Goss v. Ellison,* 136 Mass. 503; *Denver & Rio Grande R. Co. v. Sullivan,* 21 Col. 302, 41 Pac. 501; *Allen v. Ruland,* 79 Conn. 405, 65 Atl. 138, 118 Am. St. 146.·

Without reviewing the cases cited by the appellant in detail, it may be stated generally that an examination of them will disclose that they fall into one of four classes: First, cases where the release was oral. Second, cases which are affected by the statute of the particular jurisdiction. Third, cases where courts have taken a different view of the effect of the release of one joint tort feasor from that adopted by this court in the *Abb* case, *supra,* and adhered to in *Randall v. Gerrick, supra.* Fourth, injuries not known at the time of the execution of the release. The cases cited, therefore, are not authority which would sustain the admission of oral evidence to vary the unambiguous language of the release and destroy its legal effect.

Finally, it is contended that the release signed was

induced by fraud. In this contention there is no merit. At the time, the appellant was represented by counsel, the parties were dealing at arm's length, and the evidence fails to show any overreaching. The appellant apparently knew at the time that he was releasing Lanphere from all future liability growing out of any sales of stock in the company, but it may be that he did not then fully appreciate the legal effect of such a release. While the appellant, as appears from the record, has been grossly defrauded, the court cannot disregard settled legal principles in order to relieve him from a hard situation in which he has placed himself.

The judgment will be affirmed.

HOLCOMB, C. J., PARKER, MITCHELL, and MACKINTOSH, JJ., concur.