[No. 16946. Department Two. May 11, 1922.]

SELVIN ARNESON, *Respondent,* v. GRANT SMITH &
COMPANY, *Appellant.* [1]

MASTER AND SERVANT (20·1)—WORKMEN'S COMPENSATION ACT—
RAILROAD EMPLOYEES—INDEPENDENT CONTRACTOR. The remedy for
personal injuries, sustained by an employee of an independent con-
tractor on maintenance work for interstate commerce common
carriers, is an action against the contractor, and not under the
industrial insurance law.

SAME (90, 99)—DEFECTIVE APPLIANCE—ASSUMPTION OF RISK—
SIMPLE TOOLS. An inexperienced workman does not assume the
risk of using, pursuant to orders, a defective pipe wrench the jaws
of which were worn smooth, and liable to slip, since the rule as to
"simple tools" does not apply in such a case where the master had
actual knowledge of the defect and the employee had not.

SAME (33)—SAFE APPLIANCES—FELLOW SERVANTS—DELEGATION
OF DUTY. The master is liable to an inexperienced workman for
injuries sustained through using a defective pipe wrench, furnished
by a fellow servant under whose direction he was placed by the
foreman, since the duty of furnishing safe tools is non-delegable.

EVIDENCE (200)—OPINION EVIDENCE—SAFE METHOD OF WORK. Ex-
pert opinion evidence that a pipe wrench with smooth jaws liable to
slip is not a safe tool to use on steam pipes on a scaffold, and that
another kind would be safer, is competent.

MASTER AND SERVANT (138)—DEFECTIVE APPLIANCE—WARNING TO
SERVANT—EVIDENCE—ADMISSIBILITY. In an action by an inexperi-
enced workman, it is competent to show that he had not been warned
of the condition or of the danger from using a pipe wrench with
smooth jaws, liable to slip.

SAME (68)—VICE PRINCIPAL—DELEGATION OF DUTY—DEFECTIVE
APPLIANCE—FELLOW SERVANTS. When a foreman and vice principal
places an inexperienced workman under the direction of a fellow
servant, the latter is constituted a vice principal as to furnishing
tools and directing the work, and is not a fellow servant.

SAME (87)—NEGLIGENCE—PROXIMATE CAUSE—CONCURRENT NEGLI-
GENCE OF FELLOW SERVANT. A master who is guilty of negligence
which is the proximate cause of an injury, is not relieved of re-
sponsibility by the concurrent negligence of a fellow servant.

[1]Reported in 206 Pac. 960.

SAME (99)—ASSUMPTION OF RISKS—OBVIOUS DANGERS—DEFECTIVE APPLIANCES. A servant only assumes the risks that are obvious after the master has discharged the duty to furnish reasonably safe appliances.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered July 5, 1921, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee in a fall from a scaffold. Affirmed.

*Charles E. Swan,* for appellant.

*E. W. Robertson,* for respondent.

HOLCOMB, J.—Respondent was injured while working for appellant, an independent contractor of two interstate commerce common carriers, in maintenance work on their lines. His remedy was, therefore, an action for damages against the contractor, rather than under the industrial insurance law. *Luby v. Industrial Insurance Commission,* 112 Wash. 153, 191 Pac. 855.

The negligence on which respondent relies to recover is that appellant furnished him with an unsafe and defective wrench. At the time of the accident, respondent was on a scaffold attempting to loosen a two and one-half inch pipe with what is known as a "Trimo pipe wrench." He had placed the wrench on the pipe and was attempting to turn the pipe by throwing his weight against the wrench, when it slipped off the pipe. He lost his balance and fell from the scaffold to the ground, breaking his wrist. The wrench which respondent was using had been handed to him by one Gavert, with whom he was working at the time and who testified, as did respondent, that the teeth of the wrench were considerably worn and the springs weak. Respondent himself testified that he had not examined the wrench and knew nothing about its condition; that

he had been in the employ of appellant for about two months, but had been working with Gavert on the pipes about three days only before the accident; that he had never done any work upon pipes or with a pipe wrench before.  The only work he had done before had been farm work, except one summer he had pushed ore cars out of a mine, and for eight months at one time and for two months at another time he had worked as a railroad brakeman.  He had also worked six months. piling lumber; had worked with pick and shovel for appellant on the railroad viaduct for three or four weeks previous to the pipe work; and these constituted all of his experiences at any kind of labor.  He had had occasion to use but few tools of any kind.  One Christenson was admitted by appellant to have been its foreman and vice principal in charge of the work at the time of the accident.  Christenson directed respondent to come down off the viaduct where he had been working with a pick and shovel and help Gavert, told him that Gavert would tell him what to do, and that Gavert was the pipe fitter.  Respondent told Christenson that he knew nothing about pipe fitting, and had never used a wrench or anything in that line of work, but Christenson told him that the pipe fitter would show him what to do.  For the first three days Gavert and respondent worked on the ground on smaller sized pipe.  The foreman then came and ordered them to remove a two and one-half inch drainpipe from beneath the viaduct, and some distance above the pavement.  Gavert went over and got the pipe wrench, handed it to respondent and told him to get busy on the scaffold.  Respondent first put the wrench on wrong, when Gavert told him to turn it over.  He turned it over and put the wrench on the pipe again and started to put his strength to the wrench, when it slipped and respondent fell to the pavement.  The

wrench in question was a large, heavy tool about three feet long. It was the only wrench of that size on the job, and it was necessary to have a wrench of that size for the large pipe.

Gavert testified that he had had occasion to use that particular wrench prior to the date of the accident, and had observed that the teeth or corrugations on the jaws of the wrench were badly worn, and that when in that condition the wrench would slip on the pipe, and that this particular wrench had slipped with him on previous occasions. The tools on the job, including this wrench, were kept in the company's tool box, the key to which was kept by the foreman, Christenson, who locked the box at night and unlocked it in the morning. Christenson testified that Gavert reported to him early in the work that some of the wrenches were defective in that the jaws were worn, but Christenson claimed that he went to a store and purchased a new part for the wrench, that is, a new jaw, and that the new jaw was put on the wrench prior to this accident. He admitted that he knew that, if the jaws of a wrench were worn smooth and it was used on a pipe by a man on a scaffold, it might slip on the pipe and cause the man to lose his balance and fall.

Appellant, in its answer, denied the defective condition of the wrench, and by way of affirmative defense alleged: First, assumption of risk, in that the condition of the wrench was open, obvious and known, or, in the exercise of reasonable care, should have been known by respondent; second, contributory negligence, in that respondent failed to take proper precaution for his own safety; third, negligence of a fellow servant of respondent.

Respondent, by reply, denied the affirmative matters in appellant's answer.

At the conclusion of respondent's testimony appellant challenged the sufficiency of the evidence to sustain a verdict; moved the court for judgment in favor of defendant; and upon the conclusion of all the testimony, moved the court to direct the jury to return a verdict for defendant, or to withdraw the case from the jury and enter judgment for defendant, which motions were denied by the court. After verdict, appellant moved for judgment n.o.v., and in the alternative for a new trial, which motions were denied, and judgment entered upon the verdict.

Appellant first contends that the wrench given to respondent was a simple tool. To support this contention it cites first the case of *Bougas v. Eschbach-Bruce Co.*, 77 Wash. 347, 137 Pac. 472, which involved a clamp used as a block on rails to hold a steam-shovel which had been used by an adult employee for fifty-eight days, the employee being experienced in the work he was performing. We there observed that certain tools, such as "A backing hammer, a buffer, chisels, claw bars, crow bars, driftpins, dolly bars, a fork used in a dyehouse, a hook with a short handle used for moving timbers in a sawmill, lifting jacks, machine hammers, mauls, monkey wrenches, pinch bars, prize poles, punches, rivet hammers, snap hammers, soft heads, and wrenches," had been held to be simple tools. We are inclined to the view that the pipe wrench involved in this case does not fall within the above category. But, however that may be, as we have observed in the case cited, the rule as to "simple tools" has not been extended to "infants, inexperienced young men, and employees who were using the tool for the first time in obedience to the direction of the master." We also there observed that this court has been exceedingly liberal in holding to the rule that ordinarily the duty of the master to furnish a reasonably safe

place and safe tools for its employees is a non-delegable one. The last observation applies with force to the contention of appellant that Gavert was a fellow servant of respondent, and if there was any negligence in his furnishing of the tool it was the negligence of a fellow servant and not of the principal.

The evidence on which the verdict and judgment rest in this case shows that the wrench was defective and that it was furnished by Gavert, under whose authority respondent had been placed by one admitted to be the foreman and vice principal of appellant. Respondent was inexperienced in the handling of such a tool, took the tool given him, obeyed the immediate orders of the master, and the defective tool caused the injury.

The rule that the master is not liable for injuries resulting from defects of simple tools has no application where the master has actual knowledge of the defect and the employee has not. *Stork v. Charles Stolper Cooperage Co.*, 127 Wis. 318, 106 N. W. 841; *Randall v. Gerrick,* 104 Wash. 422, 176 Pac. 675; *Bailey v. Cascade Timber Co.,* 32 Wash. 319, 73 Pac. 385.

Six assignments of error are based upon the admission by the court of expert, or opinion evidence. Several cases are cited by appellant to sustain its contentions, which we do not consider applicable.

We think the evidence complained of to the effect that a Trimo pipe wrench was not a safe tool to use in loosening steam pipes on a scaffold, and that some other kind of a wrench would have been safer in that place for the work, was competent. In *Smith v. Dow,* 43 Wash. 407, 86 Pac. 555, we held that it was competent to introduce expert evidence as to the proper way to tie packages, in that the method used by appellant was unsafe and not the usual method, where the witness had been qualified as an expert. In *Jones v. Chicago, Milwaukee & St. P. R. Co.,* 102 Wash. 120, 172

Pac. 810, we held that it was not error to permit an expert witness to answer whether it was a safe and proper method of unloading logs from the car to place the jammer upon a track alongside of the load of logs and fix the hooks from a cable in the logs and unload them in that manner. See, also, *Stone v. Sylliaasen,* 70 Wash. 89, 126 Pac. 84; *Gustafson v. West Lumber Co.,* 51 Wash. 25, 97 Pac. 1094; *Keating v. Pacific Steam Whaling Co.,* 21 Wash. 415, 58 Pac. 224.

We also consider that it was not erroneous to allow respondent to testify that he had never been told of the condition of the wrench, or of the danger of its slipping off the pipe, over appellant's objection. That was certainly proper to show that he had not been warned of the defective condition of the wrench.

An instruction by the court is complained of in which the jury were told that, if they found that plaintiff was inexperienced and unacquainted with the work of loosening pipes by means of a wrench, and that Christenson, admitted by the pleadings to be the vice principal of appellant, knew of the inexperience of respondent and ordered him to work under the control and direction of Gavert, then Christenson constituted Gavert a vice principal in so far as furnishing the appliance to respondent and the direction of respondent in the work is concerned.

Appellant contends that there was no evidence to justify this instruction. It was admitted in the pleadings that Christenson was foreman and vice principal. It was shown by both respondent and by Christenson that Christenson instructed respondent to go to Gavert and put himself under Gavert's instructions and do what Gavert told him to do.

It is plain, therefore, that Christenson delegated his authority to Gavert, and that Gavert was an arm of the vice principal and not a fellow servant of respond-

ent. *Bailey v. Cascade Timber Co., supra; Collins v. Terminal Transfer Co.,* 91 Wash. 463, 157 Pac. 1092. Consequently, it was eminently proper for the court to so instruct the jury. It was necessary for them to find the facts as to whether respondent was inexperienced and unacquainted with the work of loosening pipes by means of a pipe wrench; that Christenson knew of his inexperience; that he ordered respondent to work under the control and direction of Gavert, and that Gavert furnished him the appliance with which to do the work.

An instruction is complained of to the effect that "A master who is guilty of negligence which operates as the proximate cause of an injury is not relieved from responsibility because of the concurrent negligence of a fellow servant of the workman injured."

This instruction is not erroneous under the authority of *Keating v. Pacific Steam Whaling Co., supra.*

Appellant complains of an instruction (numbered 9) comprising the duty of a master to furnish a servant with reasonably safe tools and appliances with which to work; the right of the servant to rely upon the presumption that the master has performed his duty; that the jury might take into consideration the presumption, and the knowledge or lack of knowledge and experience of plaintiff; his opportunity of observing the condition of the tool in question; whether or not he was required, in the performance of the task, to inspect the same, etc. It is contended that this instruction was erroneous because the rule of law announced therein has no application to cases involving simple tools.

What we have said as to the question of a simple tool and the right of respondent to rely, under the circumstances shown in this case, upon the tool handed to him by his superior, disposes of this and all other

like instructions complained of by appellant as to the duty of respondent respecting a simple tool and the question of fellow service.

One other instruction especially complained of by appellant, No. 11, we will set out in full:

"I instruct you that while an employee assumes all the dangers inherent in the work, and that are ordinarily incident thereto, yet he does not assume the risk of his employer's negligence. The risks assumed by the servant are those, and those only that are obvious if the master has discharged the duty imposed upon him by law of using ordinary care and prudence in providing the servant with reasonably safe appliances with which to labor. The servant only assumes such risks as are incident to his job after his employer has fulfilled the primary duty of using reasonable care to furnish proper working appliances."

We set out this instruction in full because it practically contains the essence of the whole law of the case between master and servant under the state of facts shown in this case; and it is almost a literal extract from the decision of this court in *Blair v. Spokane,* 66 Wash. 399, 119 Pac. 839.

The instructions given the jury were fair, lucid and comprehensive, some of them going quite to the limit in favor of appellant. We discover no error in the trial below.

The judgment is therefore affirmed.

PARKER, C. J., HOVEY, MACKINTOSH, and MAIN, JJ., concur.