[No. 17653. Department Two. July 17, 1923.]

SUNSET COPPER COMPANY *et al., Appellants,* v. J. E. ZICKRICK, *Respondent,* F. H. DEAN *et al., Interveners.*[1]

RELEASE (6)—OPERATION AND EFFECT—JOINT WRONGDOERS. The acceptance of money in satisfaction of a claim against one joint tort feasor, with a reservation that it shall not be considered to release another joint tort feasor, operates as a release of the latter.

BROKERS (5)—DUTIES—FRAUD—MISREPRESENTING PRICE. An agent employed to purchase property who misrepresented the price paid and made a secret profit at the expense of his principal is guilty of fraud and liable to the principal.

RELEASE (6)—OPERATION AND EFFECT—JOINT WRONGDOERS. Where an agent, employed to purchase property, made a secret agreement with the seller to represent the price to the principal as $100,000 when it was but $90,000, the excess of $10,000 to be paid to the agent, they were joint tort feasors in the wrong committed upon the principal, so that the release of the agent operated to release the seller.

Appeal from a judgment of the superior court for King county, Frater, J., entered April 29, 1922, upon findings in favor of the defendant, in an action for damages from fraud and concealment, tried on the merits to the court. Affirmed.

*Kerr, McCord & Ivey* and *Wm. Z. Kerr,* for appellants.

*George A. Custer,* for respondent.

MAIN, C. J.—The plaintiff brought this action to recover from J. E. Zickrick and W. W. Black the sum of $10,000, which it is alleged that the Sunset Copper Company was entitled to because of claimed concealment and misrepresentation of the purchase price of certain mining property. The fund in dispute, or a

[1]Reported in 217 Pac. 5.

part of it, was also claimed by certain interveners. After the action was instituted, a settlement was made between Black, the interveners, and the plaintiffs, whereby Black paid the sum of $3,500 to the Copper Company and $1,500 to the interveners. Thereafter, in accordance with a stipulation, the action against Black was dismissed with prejudice. It came on for trial with Zickrick being the only defendant. At the close of the plaintiff's case, the court dismissed the action with prejudice, and the plaintiffs have appealed.

The facts are somewhat involved, but may be summarized as follows: On March 9, 1916, and for some time prior thereto, W. W. Black and Frank L. Bell were the owners of certain mining property, situated near Index, in Snohomish county. Bell was a non-resident of the state and Black acted for him in dealing with the property by virtue of a power of attorney. W. R. Scott, George H. Stevenson and the respondent, J. E. Zickrick, desired to purchase this property, or an option upon it. Scott advanced $1,000, and Zickrick, with this money in his possession, went to Black for the purpose of making a contract with reference to the purchase of the property. On this occasion, Zickrick, for the $1,000, purchased an option upon the property and received a receipt therefor which specified that the purchase price was $100,000. At the same time, there was delivered to him this writing:

"Whereas, the undersigned, W. W. Black, gave a receipt to J. E. Zickrick for One Thousand Dollars ($1,000) for an option on the Sunset property for the price of One Hundred Thousand Dollars ($100,000).

"Now, therefore, it is agreed that the real price is Ninety Thousand Dollars ($90,000) to Zickrick, that anything in excess of Ninety Thousand Dollars ($90,000) is to be paid to J. E. Zickrick.

"Dated this 9th day of March, 1916.

"W. W. Black."

When Zickrick reported to Stevenson and Scott that the purchase price was $100,000 instead of $90,000, they expressed some surprise, as it had been their understanding that the purchase could be made for $90,000. Zickrick assured them that the "bed rock" price for which the property could be purchased was $100,000. He did not disclose to them the memorandum above set out whereby he was to receive all of the purchase price in excess of $90,000. On the 17th of April, 1916, Stevenson and Zickrick went to see Black for the purpose of taking up the option and entering into a formal contract of purchase. Stevenson testified that, on this occasion, Black assured him that the purchase price of the property was $100,000, and a contract was taken in Stevenson's name by which the purchase price was fixed at that sum. On the same day, Stevenson, Zickrick and Scott entered into a contract between themselves defining their respective interests in the property.

On the 3rd day of May, 1916, the contract of purchase between Black and Scott was superseded by a separate contract between Stevenson and Bell for the latter's interest in the property, and another contract between Stevenson and Black for his interest in the property. On the 5th day of October, 1916, another contract was entered into covering the matter of the subsequent payments. On the 2nd day of May, 1917, Zickrick sold and transferred his entire interest in the contract and property to Stevenson for the sum of $10,000. It should be noticed here that this $10,000 is not the subject-matter of this action. Some time subsequently Stevenson and Scott assigned and transferred all of their interest to the Sunset Copper Company, a corporation, one of the appellants.

This company prosecuted certain development work upon the property, added machinery and expended a large sum of money. It made the payments on the contract of purchase from time to time as they became due. It was not until the fall of 1917, or sometime during the early spring of 1918, that the appellants learned of the secret agreement between Black and Zickrick which provided that the real purchase price was $90,000 instead of $100,000 and that the $10,000 excess should be paid to Zickrick. Notwithstanding this fact, the appellants continued to make the payments upon the purchase price, but protested against paying the last $10,000. This was paid, however, because the contract contained a provision making time the essence thereof. The appellants took the position that, since the real purchase price of the property was $90,000 instead of $100,000, they should not be required to pay more than the $90,000. As already stated, they paid the last $10,000, making the full $100,000, to avoid the possible forfeiture of their contract, which they claim was threatened if they did not make the payment. After this action was begun, a stipulation was entered into, as above indicated, which provided that, if Black should pay the sum of $5,000, the action should be dismissed as to him, with prejudice.

There are a number of questions discussed in the briefs, but the law of the case appears to us to be not very difficult, even though it is not easy to state the facts with clearness.

The controlling question is whether the release of Black was a release of the action against Zickrick, a joint tort feasor. The rule is that the acceptance of money in satisfaction of a claim against one joint tort feasor, with a reservation that it shall not be considered as a release of another joint tort feasor, operates

as a release of the latter.   *Randall v. Gerrick,* 93 Wash. 522, 161 Pac. 357, L. R. A. 1918D 179; *Larson v. Anderson,* 108 Wash. 157, 182 Pac. 957, 6 A. L. R. 621; *Betcher v. Kunz,* 112 Wash. 563, 192 Pac. 955.

It cannot be doubted that, when Zickrick represented to Stevenson and Scott that the "bed rock" purchase price of the property was $100,000, instead of $90,000, and did not disclose to them the secret agreement by which he was to receive the difference between the $90,000 and the $100,000, he was committing a fraud upon them.   Where an agent is employed to purchase property at a certain price, or the best price possible, and he enters into a contract for its purchase at a greater price whereby he is to be benefited at the expense of his principal, he is guilty of fraud in the misrepresentation of the purchase price.   *Hindle v. Holcomb,* 34 Wash. 336, 75 Pac. 873; *Packard v. Booth,* 62 Wash. 333, 113 Pac. 774; *Stewart v. Preston,* 77 Wash. 559, 137 Pac. 993.

Zickrick, in taking the secret agreement by which he was to be benefited to the extent of $10,000, was committing a fraud upon Stevenson and Scott.   As already pointed out, Black, when the contract of purchase was made between him and Stevenson, assured the latter that the purchase price was $100,000.   The arrangement between Black and Zickrick was such that we think the release of one operated as a release of the other, under the rule above stated with reference to the effect of the release of one of two joint tort feasors.

This disposes of the case except as to the $1,500 which was paid the interveners.   As indicated, Zickrick, prior to the time when he sold and transferred his interest to Stevenson, had made some kind of an assignment to those who intervened in the action.   The assignment from Zickrick to Stevenson, it appears to

be conceded, was broad enough to include the $10,000 for which this action was brought. Whether the Sunset Copper Company has a right to offset the $1,500 paid the interveners against the balance of the purchase price for his interest in the property which he sold to Stevenson, will not be here determined, as this question more properly will arise if the $1,500 is pleaded as an offset in an action brought by Zickrick for the balance due him upon his contract of assignment.

The judgment will be affirmed.

FULLERTON, PARKER, and TOLMAN, JJ., concur.