[No. 13161. Department One. December 5, 1916.]

R. H. Martin, *Appellant*, v. John G. Cunningham, *Respondent*.[1]

Release and Discharge—Damages Included—Injuries to Serv-
ant—Malpractice of Physician. Malpractice by an attending physi-
cian, in a case in which the master was liable for the original in-
jury, being one of the probable consequences of the injury for which
the master is liable whether furnishing the physician or not, a re-
lease of all damages, given to the master in full settlement of any
and all claims of every kind, operates to discharge a physician fur-
nished by the master, and precludes an action against the physician
for malpractice in treating the injury and carelessly aggravating
the damages (Ellis, J., dissenting).

Appeal from a judgment of the superior court for Spokane
county, Clifford, J., entered March 19, 1915, upon granting
a nonsuit, dismissing an action for malpractice, tried to the
court and a jury. Affirmed.

*F. A. McMaster*, for appellant.

*Harry L. Cohn* and *Cannon & Ferris*, for respondent.

Fullerton, J.—On November 7, 1913, R. H. Martin, a
fireman in the employ of the Great Northern Railway Com-
pany, fractured the tibia of his left leg in jumping from an
engine to avoid a head-on collision. He was taken to a hos-
pital in Spokane and placed in charge of the company's local
surgeon, John G. Cunningham, who treated him from that
date until about March 10, 1914. Satisfactory results not
having been effected under the treatment accorded by the
surgeon, another surgeon was called in by Martin, who oper-
ated on him and produced better results, but did not obtain
a perfect cure of the injured leg.

On June 13, 1914, Martin filed a complaint for personal
injuries against the railway company. On July 6, 1914, the
action was compromised for $8,000, and a judgment of dis-

[1]Reported in 161 Pac. 355.

missal entered on the stipulation of the parties. On the same day, Martin and wife executed a release to the Great Northern Railway Company, which recited that it was in consideration of the payment of $8,000 for the above mentioned injury received on November 7, 1913, "including all claims for loss of time and loss of services, support and society, and all claims for medical, surgical, nursing, hospital and other expenses, arising, or to arise, out of any and all personal injuries sustained by me at any time or place while in the employ of said railway company prior to the date of these presents." The release further recited, under an addendum, that the $8,000 was "in full settlement of any and all claims of every kind."

After Martin had settled with the railway company and released it from all claims growing out of the injury, he began an action against Dr. Cunningham to recover damages for malpractice in the treatment of his injured leg. The defendant set up several affirmative defenses, the only one necessary to be considered here being the release before mentioned. On this release appearing in the evidence, and on it further appearing that both the plaintiff and defendant were employees of the company, the court entertained a challenge to the sufficiency of the evidence, and entered a judgment dismissing the action. From this judgment, the plaintiff appeals.

The trial court held that the release operated to discharge the respondent as well as the railway company, since the negligent treatment of the injury was necessarily a part of the original injury. We think this holding is in accord with the weight of judicial authority. The prevailing rule is that one who has been injured through the negligence of his employer can recover all damages proximately traceable to the primary negligence. This right of recovery extends even to subsequent aggravations whose probability the law regards as a sequence and natural result likely to flow from the original injury. *Smith v. Northern Pac. R. Co.*, 79 Wash. 448, 140 Pac. 685; *Hoseth v. Preston Mill Co.*, 49 Wash. 682, 96 Pac. 423. Mal-

practice of an attending physician, in a case where the master was liable for the original injury, has always been regarded by the law as one of the probable consequences of the injury, whether the surgeon be furnished by the master or employed with due care by the servant. This principle is well stated in *City of Dallas v. Meyers* (Tex. Civ. App.), 55 S. W. 742, as follows:

"If the injured party, in good faith, and in the exercise of ordinary care, employs a physician to treat his injuries, and his injuries are aggravated through the mistake or negligence of his physician in his treatment, the negligent or mistaken treatment of the physician does not become an intervening cause, breaking the causal connection between the negligence producing the original injury and the ultimate effects of such injury. In such case the injured party may recover damages for the injury he has sustained, including the aggravation resulting from the negligence of his doctor."

See, also, *Baldwin v. Lincoln County*, 29 Wash. 509, 69 Pac. 1081; *Gray v. Boston Elevated R. Co.*, 215 Mass. 143, 102 N. E. 71; *Reed v. Detroit*, 108 Mich. 224, 65 N. W. 967; *Lyons v. Erie R. Co.*, 57 N. Y. 489; *Chicago City R. Co. v. Saxby*, 213 Ill. 274, 72 N. E. 755, 104 Am. St. 218, 68 L. R. A. 164; *Fields v. Mankato Electric Traction Co.*, 116 Minn. 218, 133 N. W. 577; *O'Donnell v. Rhode Island Co.*, 28 R. I. 245, 66 Atl. 578.

The reasoning of these cases is equally applicable in cases of malpractice on the part of the surgeon furnished by the master to his injured servant. In the recent case of *Ross v. Erickson Construction Co.*, 89 Wash. 634, 155 Pac. 153, we held that a right of action for the malpractice of an attending physician upon an injured employee was presumed to be covered by an award under the workman's compensation act; saying that, "the consequences of malpractice is an element which will be considered and compensated for by the state;" basing the conclusion on the accepted doctrine in personal injury cases that malpractice in the treatment of an injury

was so proximately connected with the injury itself as to constitute an element to be considered in any admeasurement of damages. It thus appears to be the settled law of this state that, where the master's negligence makes him liable for the personal injuries of his employee, he is also liable for the malpractice of a physician in the treatment of the injured person.

Conceding malpractice on respondent's part, as charged by the complaint, we think appellant is precluded from a recovery against him. The railway company was liable not only for the injury and resulting suffering of appellant, but also for the malpractice of the attending surgeon and for the expenses of medical attendance. Having that liability in view, the company settled with him, paying him a substantial sum for a release from further liability. At the date of the release, the appellant had already suffered from the alleged malpractice and had employed another surgeon to remedy it, to whom he had paid $500 for the service. These were all matters that could be enforced against the railway company under its liability for damages, and the settlement was clearly made with a view to covering all those elements of damages. They were known to exist by the parties to the release, and the settlement was made with reference to them. The release having been made in full satisfaction of all existing claims, precludes the appellant from bringing a second action for malpractice against the surgeon, occupying somewhat the position of a joint tort feasor, to recover double compensation for what he has already been satisfied. It is a well settled doctrine of the law that complete satisfaction for an injury, received from one person in consideration of his release, operates to discharge all who are liable therefor, whether they be joint or several wrongdoers. *Ayer v. Ashmead,* 31 Conn. 447, 83 Am. Dec. 154; *Allen v. Ruland,* 79 Conn. 405, 65 Atl. 138, 118 Am. St. 146; *Dulaney v. Buffum,* 173 Mo. 1, 73 S. W. 125.

In *Lovejoy v. Murray*, 3 Wall. 1, it is said:

"But when plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come, he is so far affected in equity and good conscience that the law will not permit him to recover again for the same damages."

The court in *Miller v. Beck*, 108 Iowa 575, 79 N. W. 344, commenting on the foregoing, adds:

"In accordance with this rule, it has frequently been held that the validity and effect of a release of a cause of action does not depend upon the validity of the cause of action, and that if the claim is made against one, and it is satisfied, all who may be liable are discharged, whether the one released be liable or not. *Leddy v. Barney*, 139 Mass. 397, 2 N. E. 107; *Tompkins v. Railway Co.*, 66 Cal. 163, 4 Pac. 1166; *Brown v. City of Cambridge*, 3 Allen (Mass.) 474; *Butler v. Ashworth*, 110 Cal. 614, 43 Pac. 386; *Metz v. Soule*, 40 Iowa 236."

See, also, *Cleveland, C. C. & St. L. R. Co. v. Hilligoss*, 171 Ind. 417, 86 N. E. 485, 131 Am. St. 258.

Here there was a complete satisfaction, and, under the better rule, we think the trial court rightfully decided there could be no recovery.

The judgment is affirmed.

MORRIS, C. J., MOUNT, and CHADWICK, JJ., concur.

ELLIS, J. (dissenting)—It seems to me that the malpractice of a physician is his own act and, if it exists at all, furnishes ground for an independent action. The railroad company performed its duty by selecting a competent physician; but even a competent physician may be negligent, and, if he is negligent to another's injury, I can see no reason why he should not be held to respond in damages. The physician is not a joint tort feasor. His negligence arises subsequently to the original injury. The release of the railroad company should be held to be no more than a release from the consequences of its own negligence; not from the consequences of the independent negligence of another. I therefore dissent.