[No. 23610. Department Two. July 20, 1932.]

R. J. McALLISTER *et al., Appellants,* v. P. O. ANDERSON, *Respondent.*[1]

*E. H. Kohlhase,* for appellants.
*Atwell & Moore,* for respondent.

TOLMAN, C. J.—This is an action for damages growing out of an automobile collision. A trial to a jury was had, resulting in a verdict in plaintiffs' favor in the sum of a thousand dollars. After the rendition of

[1]Reported in 13 P. (2d) 36.

the verdict, the court granted a motion for judgment notwithstanding the verdict which was followed by a judgment dismissing the action; and the plaintiffs have appealed therefrom.

In granting the motion for judgment n. o. v., the trial court held that the appellants were guilty of contributory negligence as a matter of law, and that ruling is the sole question now presented for review.

It appears that the Pacific highway runs south through the city of Kelso over what was formerly known as Second street, now Pacific street or avenue, and at the intersection of that street with Ash street, the highway turns at a right angle to the east and follows Ash street easterly. Third street is two hundred feet east of Second street, or Pacific avenue, and the intersection of Ash street and Third street is therefore two hundred feet from the right-angle turn in the highway.

At about midnight of a dark and rainy night in March of last year, appellants, in a Hupmobile eight, were driving north on Third street. Coming to the intersection of Third street and Ash street, or the Pacific highway, according to the testimony of the husband, the following occurred:

"I ran up and asked the wife how it looked to the north of us, or east of us, and I looked the other way. The coast was clear, the street, and I started to move out. Just as I started moving out I seen lights of a car swinging around from the west. Q. From the west? You looked west? A. I looked west and my wife looked to the east. Q. As you entered the intersection (interrupted). A. Around the corner where? Q. Pacific, on to Ash. Q. Coming into Ash? A. Coming into Ash street. Q. In what direction was he going? A. He was headed north, or east. Q. Headed east? A. Yes. Q. On Ash street? A. Yes. Q. Then what happened? Tell us how were you driving your car, in what gear? A. I was in low gear, coming from

the stop. The car was still in low, because the way he was coming I realized that in the time I get into second, on account of the hesitation,—so I stayed right in low. I was across the street with my front wheels starting in on Third street again, and he took us; he caught the rear end of our car. . . . Q. How fast was he coming? A. He must have been going thirty-five or forty miles an hour. Q. The first you observed him was when you started in the intersection? A. Yes. Q. You say his lights were swinging around the turn from Pacific avenue? A. Yes. Q. You said your front wheels had— A. Started in on Third. Q. Going through the intersection? A. Gone through the intersection and started in on Third. Q. Where did he hit you? A. He hit me on the rear bumper and frame. Q. What, if any, signs of warning did Anderson give? A. He gave none. I do not believe he saw me. He made no effort to stop. He was right in the center of the pavement and if he had saw me he would have had room to go behind me or stop or do something.''

On cross-examination, he testified:

''Q. What did you do then? A. I looked to see how the highway was. Seeing it was clear, I started out to cross this intersection. Q. Where did you get to before you were hit? A. Approximately— . . . Q. The engine, was that idling? A. Yes. Q. You put your car into low gear? A. Yes. Q. Did you look then before you started, after you put your car in gear, to see if you had a clear way? A. Yes. Q. You looked after this time, then? A. Yes. Q. When is the first time you saw the Anderson car approaching? A. After my car started in motion. Q. How far? How long after your car started in motion? A. Right after. Q. Immediately? A. Yes. Q. Where was the Anderson car coming? A. Just coming around the corner. Q. Slippery streets and everything? You saw how fast he was coming, did you? A. Not until he was very near on me. . . . Q. You saw how fast the Anderson car was coming down the highway, didn't you? A. Well, not until he was right up on me. Q. Did not see how fast he was coming around the curve—didn't notice that? A. The only way I could tell he was going

fairly fast was by the way the car swerved when he straightened it up. Q. You saw that when he went around the curve then? A. Yes. Q. How fast do you think he was going when he came around the curve? A. Possibly twenty-five to thirty-five miles an hour. Q. Possibly twenty-five to thirty-five miles an hour? A. Yes. Q. No faster than that? A. Well, I could not tell you that. I was not with him. Q. Do you think it would be thirty miles an hour? A. At least that. Q. At least thirty miles an hour? A. Yes."

The appellant wife testified:

"A. Well, we only got up to Ash street, why, we stopped to see if there was any cars coming, and there wasn't, so my husband put the car into low and started across, and just as he started, just as he got his wheel out on the road, we saw this car coming out around the corner from Pacific highway. My husband gave it all the gas it would take so we would get across before the car got there; it was almost across when the crash came. I just felt myself going. That is all I remember."

And on cross-examination, she testified:

"Q. You say you came up to Ash street and you stopped? A. Yes, we stopped. Q. I think you testified just as you started up again you saw this car come around the curve to the west? A. Yes, just as we started across the street. Q. You said, just as you started to move? A. I said, as we started across the street. Q. About when you started across the street you saw that car coming around? A. Yes. Q. How far along were you? A. Just as we started in on the intersection. Q. Just as you got up to the curb line? A. No, after we had started. Q. Did you come to a standstill at the curb line? A. Yes. Q. Then you had just started your car up? A. Just started the car across the street, seen this car coming. Q. Just had started, when you saw the car coming? A. Yes. Q. You were in low? A. Yes. Q. You believe your husband gave it all the gas he had to get across ahead of the other car? A. Yes. Q. You knew that the other car

was coming very fast? A. Yes, I could. Q. When you saw it come around the corner you knew it was coming very fast? A. Yes, I did.''

There was more testimony largely to the same effect, and nothing tending to nullify or contradict what is here quoted.

■ It seems to us that the minds of reasonable men can not differ as to the contributory negligence of the appellants. When one driving on a non-arterial street or highway approaches an arterial highway, he knows and is bound to know that travelers thereon having or assuming to have the right of way will be traveling at considerable speed and keeping less than the usual outlook for intercepting cross-traffic. This is especially true at midnight, when travelers, presuming upon absence of congestion, are prone to greater speed and less care for others than may be expected in the busy hours of day. One about to cross such an arterial highway, seeing a car rapidly rounding a curve and heading toward him but two hundred feet away, should instantly stop his car before entering the zone of danger, rather than to attempt to win in a contest for the right of way.

Here it is apparent that, immediately after appellants' car started in motion and before it entered the zone of danger, its driver could and should have stopped it and permitted the traveler on the arterial highway to pass. Appellant was the disfavored driver. He was bound to look out for and yield to the traveler on the arterial highway. It was his duty to know, if he reasonably could, the speed at which the other was traveling, and to avoid him even though he might be driving negligently. Not having followed the obviously safe and prudent course, the appellants were guilty of contributory negligence, and the facts being

undisputed and coming from their own lips, the trial court properly held that they were so guilty, as a matter of law.

The judgment appealed from is affirmed.

MAIN, HOLCOMB, BEALS, and MILLARD, JJ., concur.