[No. 24662.   Department Two.   December 8, 1933.]

JOHN W. RUST *et al., Appellants,* v. A. A. SCHLAITZER *et al., Respondents,* SHIELDS TRANSPORTATION COMPANY *et al., Appellants.*[1]

[1]Reported in 27 P. (2d) 571.

*Shank, Belt & Rode,* for appellants.

*Reynolds, Ballinger, Hutson & Boldt,* for respondents.

BLAKE, J.—This action arises out of a collision between three automobiles, which occurred at about seven-fifteen a. m., August 10, 1931, at the intersection of east Marginal way and Michigan street, in Seattle. East Marginal way is an arterial highway which extends in a northerly and southerly direction; Michigan street extends in an easterly and westerly direction. East Marginal way has two strips of paving, each twenty feet wide, with an unpaved strip of ground between. The easterly strip of paving carries the northbound traffic.

The plaintiff John W. Rust was driving north on east Marginal way. A bus of defendant Shields Transportation Company was following thirty feet behind the Rust car. The defendant A. A. Schlaitzer was driving east on Michigan street. When Schlaitzer came to east Marginal way, he stopped before entering the westerly strip of paving. He then proceeded across the westerly strip of paving to the unpaved portion of the street lying between the two paved portions. Here he stopped again.

At this point, he observed the Rust car and the bus approaching from the south. He testified that the Rust car was eighty feet from the intersection. He started to cross in front of the Rust car. Rust testified that, at the time Schlaitzer started across the easterly pavement, he (Rust) was only thirty feet from the intersection. Be this as it may, Rust applied his brakes, and succeeded in stopping his car before colliding with the Schlaitzer car. But the bus came on and ran into the Rust car, shoving it forward against the Schlaitzer car before the latter cleared the pave-

ment. The Rust and Schlaitzer cars were somewhat damaged, and Rust himself was slightly injured.

The defendant Mercer Casualty Company carried the liability insurance required by statute of the transportation company. After some negotiations between himself and attorneys for the casualty company, Rust executed the following agreement:

"KNOW ALL MEN BY THESE PRESENTS, That we, JOHN W. RUST and ZELMA ALICE RUST, of Route No. 2, Kent, Washington, in consideration of Two Hundred ($200) Dollars to us duly paid, do hereby covenant with Shields Transportation Company and the Mercer Casualty Company that we will never sue the said Shields Transportation Company or the Mercer Casualty Company for or on account of any claim for damages which we, individually or collectively, may have by reason of the automobile accident which occurred at or near the intersection of Marginal way and Michigan street, Seattle, Washington, on August 10, 1931, when the bus driven by Bert Kilbourne collided with the machine belonging to us.

"We, individually and collectively, further covenant and agree that these presents may be pleaded as a defense to any action or other proceedings which may be brought, instituted or taken by the undersigned against the Shields Transportation Company or the Mercer Casualty Company in breach of this covenant.

"It is further understood and agreed that we reserve the right to sue A. A. Schlaitzer for and on account of any claim for injuries which we may have against him by reason of the above described matters, and this instrument shall not be construed as a waiver or settlement of any claim for damages against the said A. A. Schlaitzer by reason of the matters and things aforesaid.

"IN WITNESS WHEREOF, we hereunto set our hands and seals this 21st day of November, 1931.

"Witnesses:      JOHN W. RUST      (Seal)
"ETHEL I. ELSBURY      ZELMA ALICE RUST (Seal)
"ARTHUR B. LANGLIE"

334

Thereafter, he commenced this action for damages against Schlaitzer, who, by cross-complaint, brought the transportation and casualty companies into the action, alleging that the damages were the result of the bus driver's negligence.

The case was tried to the court. Findings were made to the effect that the defendant Schlaitzer was free from negligence; that the bus driver was negligent; and that the agreement executed by Rust (as above set out) constituted a release. Judgment was entered dismissing Rust's action against Schlaitzer, and awarding the latter fifty dollars in damages against the transportation and casualty companies. From the judgment so entered, Rust, the transportation company and the casualty company appeal.

We shall first consider the appeal of the transportation and casualty companies.

█ The court found that the bus driver was guilty of negligence on a number of grounds, among which was that he was following the Rust car too close for safety. This finding was fully justified by the evidence and the decisions of this court. For three or four miles, he had been following the Rust car with a space intervening of only about thirty feet. This provided little or no margin to avoid collision with the Rust car if the latter stopped under any conditions, as the event proved. *Spencer v. Magrini,* 115 Wash. 29, 195 Pac. 1041; *Knudson v. Bockwinkle,* 120 Wash. 527, 208 Pac. 59; *Jacklin v. North Coast Transportation Co.,* 165 Wash. 236, 5 P. (2d) 325.

█ But, notwithstanding the negligence of the bus driver, we think Schlaitzer himself was guilty of contributory negligence, as a matter of fact. According to his own testimony, the Rust car was only eighty feet away when he started across the easterly pavement. He was the disfavored driver entering upon an

arterial highway. As such, the obligation was upon him to avoid collision with vehicles approaching thereon in such close proximity to the intersection. *Cooney v. Tacoma Moving & Storage Co.,* 155 Wash. 628, 285 Pac. 667; *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932; *McAllister v. Anderson,* 169 Wash. 14, 13 P. (2d) 36. The following language in the latter case is peculiarly pertinent here:

"One about to cross such an arterial highway, seeing a car rapidly rounding a curve and heading toward him but two hundred feet away, should instantly stop his car before entering the zone of danger, rather than to attempt to win in a contest for the right of way.

"Here it is apparent that, immediately after appellants' car started in motion and before it entered the zone of danger, its driver could and should have stopped it and permitted the traveler on the arterial highway to pass. Appellant was the disfavored driver. He was bound to look out for and yield to the traveler on the arterial highway. It was his duty to know, if he reasonably could, the speed at which the other was traveling, and to avoid him even though he might be driving negligently. Not having followed the obviously safe and prudent course, the appellants were guilty of contributory negligence, and the facts being undisputed and coming from their own lips, the trial court properly held that they were so guilty, as a matter of law."

This brings us to a consideration of the case of Rust against Schlaitzer, and necessarily to a consideration of the character of the agreement made by Rust with the transportation and casualty companies. For we think it clear that Schlaitzer and the bus driver were joint tort-feasors. But for the negligence of *both,* in the particulars pointed out, the collision would not have occurred. Had the bus driver not been following too close to the Rust car, he could have avoided the collision by stopping when Rust stopped. If Schlaitzer had yielded the right of way to Rust, the

latter would have proceeded on his course without being injured by the bus. Rust, in other words, had a right of action against both the transportation company and Schlaitzer, and could sue them jointly or severally; and he can maintain this action against Schlaitzer, unless the agreement above set out constitutes a release.

Counsel for Rust concede that this court is committed to the doctrine that the release of one joint tort-feasor releases other joint tort-feasors, even though it is stipulated in the release that it is not intended to discharge the others. *Abb v. Northern Pacific R. Co.*, 28 Wash. 428, 68 Pac. 954, 92 Am. St. 864, 58 L. R. A. 293; *Martin v. Cunningham*, 93 Wash. 517, 161 Pac. 355, L. R. A. 1918A, 225; *Randall v. Gerrick*, 93 Wash. 522, 161 Pac. 357, L. R. A. 1918D, 179; *Betcher v. Kunz*, 112 Wash. 563, 192 Pac. 955; *Sunset Copper Co. v. Zickrick*, 125 Wash. 565, 217 Pac. 5.

But appellants contend that this is not a release, but a covenant not to sue. The distinction, in legal effect and consequence, between a covenant not to sue and a release is clear enough, but it is often difficult, in cases of tort, to determine whether an agreement falls within one category or the other. In classifying such an agreement, we may, so far as it affects joint tort-feasors, look to its consideration, its effect and the circumstances attending its execution. We cannot accept the recitals of the parties to the agreement as a conclusive determination of its character. If we did, any release could be couched in the formal language of a covenant not to sue and thus circumvent a salutary rule of law.

Appellants place much reliance for their position on the case of *Randall v. Gerrick, supra.* Even a casual reading of that case shows that it is not apposite in

fact or law to the case at bar. The plaintiff Randall was employed as a bridge builder by Gerrick, who, as an independent contractor, was erecting a trestle for the Great Northern Railway Company. Randall sued Gerrick and the railway company for injuries sustained in the course of his employment. While the case was pending, a stipulation was entered into dismissing the railway company on payment of one hundred dollars. An order of dismissal was entered, reciting that Randall was employed by Gerrick and not the Great Northern, and that the latter had been joined in the action by mistake. The court said:

"While the authorities maintain the principle that a satisfaction of a wrong by one not in fact liable will operate as a release of the actual wrongdoer (*Martin v. Cunningham, ante* p. 517, 161 Pac. 355), the better doctrine also recognizes the right of a party wronged to release one not liable without releasing the wrongdoer, although it may be done for a consideration, if the consideration has not in fact been accepted as a satisfaction for the injury."

The case goes no further than to hold that the release, for a nominal consideration, of one who is in no sense a tort-feasor does not operate to release the real tort-feasor. In the case at bar, we have (no matter what it may be called) what is, in substance and effect, a release of one joint tort-feasor for a consideration which reasonably compensates the releasor for the entire damage sustained.

Treating of an almost identical agreement in the case of *Hawber v. Raley,* 92 Cal. App. 701, 268 Pac. 943, the district court of appeals of California said:

"An inspection of the document in question here discloses that by its very terms it was agreed 'that should the said Mrs. E. W. Hawber at any time in the future institute claim, demand, or suit at law against the said Mrs. Harriet E. Emery the said Mrs. Harriet E. Emery may plead this agreement in full satisfac-

338

tion and release of said claim, demand, or suit at law,' and it would follow, therefore, under the rule of the authorities above cited, that said document constitutes a full release and satisfaction for the injuries received by plaintiff, and that the same is not merely a covenant not to sue.''

We think the agreement executed by Rust was, in legal effect, a release of one joint tort-feasor, and that, under the authorities above cited, it operated as a release of the other.

The judgment is affirmed on the appeal of the appellants Rust, and reversed on the appeal of Shields Transportation Company and Mercer Casualty Company.

BEALS, C. J., GERAGHTY, TOLMAN, and HOLCOMB, JJ., concur.

