[No. 28252. Department One. June 2, 1941.]

ALFRED MOEN et al., *Respondents*, v. VICTOR L. CHESTNUT et al., *Appellants.*[1]

[1]Reported in 113 P. (2d) 1030.

94

*Forest & Forest, Bonsted & Nichoson,* and *F. C. Palmer, Jr.,* for appellants.

*Harry L. Olson,* for respondents.

STEINERT, J.—Plaintiffs brought suit to recover damages for impairment of their automobile and for personal injuries to plaintiff wife, resulting from a

collision with an automobile owned by defendants. The action was tried to a jury, which returned a verdict for plaintiffs. From a judgment on the verdict, defendants appealed.

For convenience, plaintiff wife, Margaret Moen, will be referred to, in this opinion, as though she were the sole respondent, and defendant husband, Victor L. Chestnut, will be referred to as though he were the sole appellant.

The collision involved herein occurred in broad daylight, at about 6:00 p. m. on August 4, 1939, within the intersection of Summitview avenue and north Sixteenth avenue in the city of Yakima. Summitview avenue is an arterial highway, and runs in an easterly and westerly direction. North Sixteenth avenue is a nonarterial street; it runs in a northerly and southerly direction, and intersects Summitview avenue at right angles. Summitview avenue east of the intersection is thirty-six feet wide, and west of the intersection is thirty-two feet wide. North Sixteenth avenue, in the vicinity of the intersection, has a constant width of thirty-two feet. Both streets are paved. At the northeast corner of the intersection is a vacant lot; at the southeast corner is a bungalow court, the northwest corner of which is approximately twenty-two feet east of the east curb line of north Sixteenth avenue, and is sixteen and one-half feet south of the south curb line of Summitview avenue; the northwest corner of the intersection is occupied by store buildings; and at the southwest corner is a public school.

At a point near the curb on the east side of north Sixteenth avenue, approximately twenty-two feet south of the intersection, is a stop sign indicating that Summitview avenue is an arterial highway. Along the north side of Summitview avenue, east of north Sixteenth avenue, and just inside the curb, is a series

of three "school warning" signs. The first of these signs is thirty feet east of the east sidewalk on north Sixteenth avenue, and has printed upon it, in large letters, "School Crossing, Stop When Occupied." The second sign is located seventy-five feet east of the first sign, and bears the inscription "School Zone, Speed Limit 15 Miles." The third sign is located one hundred eighty-four feet east of the second sign, and has the word "Slow," in large letters, upon it.

Respondent, accompanied by a lady friend and the thirteen year old son of the latter, was driving her 1936 Chevrolet coupe in a northerly direction along north Sixteenth avenue, approaching the intersection in question. Appellant was driving a Hudson automobile in a westerly direction along Summitview avenue, toward the same intersection. Appellant was thus the favored driver, for the double reason that he was traveling upon an arterial highway and that he was the driver on the right.

Respondent's automobile entered the intersection first, proceeded across, and had reached a point where only three or four feet of the back portion of the car was yet within the intersection when its rear bumper and a portion of its right rear fender struck, or were struck by, the front end of appellant's automobile. As a result of the collision, respondent's automobile was thrown sideways, in a northwesterly direction, a distance of three or four feet, struck an automobile which had arrived, and was waiting, at the north line of the intersection, recoiled from the impact with that automobile, and then turned over onto its top, with its front end facing east. Most of the details of the accident, particularly the fact as to whether or not respondent came to a stop before entering the intersection, and the question as to which one of the two cars here involved

ran into, or against, the other, were the subjects of a sharp conflict in the evidence.

Respondent's testimony was as follows: Proceeding north along north Sixteenth avenue, she approached Summitview avenue at a speed of about fifteen miles per hour, and brought her car to a complete stop at the intersection. Just prior to that, her lady companion had cautioned her that: "This is Summitview we are coming to. It is a very bad intersection and be careful." Another car, also going north on north Sixteenth avenue, had stopped abreast, on the right, of respondent, and later turned the corner to go east. A third car, approaching from the west on Summitview avenue, had stopped at the western line of the intersection. After coming to a stop, she, respondent, looked to her right and observed appellant's car at a point near the third, or "slow," sign on Summitview avenue, a distance of two hundred fifty feet, or more, away. She estimated appellant's speed at that time at about fifteen miles per hour, and observed that he was then slowing down. Thinking that she had plenty of time to get across the intersection, she shifted gears and proceeded forward in low gear at a steady, sustained speed of about five miles per hour. When about half way across the intersection, she looked to her right again and observed appellant's car about one hundred ninety feet away, between the second and third signs. It had then slowed down to about seven or eight miles per hour. Respondent then gave her attention to the road directly ahead of her, and was proceeding cautiously because of pedestrians who were standing on the corner, or were passing back and forth along the north crosswalk of the intersection, just in front of her. She had thus reached a point where all but three or four feet of the rear portion of her car was out of the intersection when appellant's automo-

bile struck her rear bumper and a portion of her rear right fender, with the result already described. Respondent freely admitted that she had not seen the arterial stop sign near the southeast corner of the intersection, and that she had so stated after the accident. She testified positively, however, that she had nevertheless stopped before entering the intersection, and denied that she had ever made a contrary admission.

Appellant's version of the accident was materially different. It may be summarized thus: He had been traveling at a speed of about twenty-five miles per hour in the block east of the intersection. At a point approximately fifty feet from the east line of north Sixteenth avenue, he slowed down to about ten miles per hour. Respondent's car was at that time approaching from the south, at a speed of about twenty-five miles per hour, but slowed down to about fifteen or twenty miles. As respondent's car came to within fifty or seventy-five feet of the intersection, he, appellant, could hear the sound of her "motor on compression," and saw her car slowing down, which clearly indicated to him that respondent would stop at the stop sign. As he entered the intersection, however, traveling at the rate of ten miles per hour, respondent's car, instead of stopping, suddenly speeded up, entered the intersection at a speed of about twenty miles per hour, then increased its speed to twenty-five miles, and "cut" in front of him, raking the front end of his automobile. He had applied his brakes as soon as it became apparent that respondent was not yielding the right of way, and brought his car to a sudden stop, but was a second too late to avoid the collision. Following the impact, appellant's automobile did not move from its position, but remained stationary until appellant himself later drove it across the remainder of the intersection and parked it a short distance away. Appellant

further testified that respondent, while still at the scene of the accident, admitted that she had not stopped at the intersection.

The only other eyewitness who testified with reference to the collision was a lady who resided in the bungalow court located on the southeast corner of the intersection. Called as a witness for respondent, she testified that, on looking out of one of the windows of her apartment, toward the north, she observed appellant's car approaching the intersection from the east; that she first saw it when it was at a point opposite her window, and that it was then traveling at a speed of about fifteen miles per hour; that immediately thereafter "he seemed to speed up a little bit"; that his speed seemed to increase up to the point of the collision; that the right rear side of respondent's car was struck, when it was about three-fourths of the way across the intersection. The witness had not observed respondent's car prior to the collision.

Appellant called eight witnesses for the purpose, among others, of corroborating his claim that respondent had admitted that she did not stop before entering the intersection. Four of those witnesses testified that respondent had stated simply that she did not *see* the stop sign. It will be recalled that respondent herself had so testified. The other four witnesses testified, more or less categorically, that they had heard respondent admit that she had not *stopped.*

On the other hand, at the conclusion of appellant's evidence, respondent was allowed to reopen her case and present a witness who testified that he, the witness, had been traveling east on Summitview avenue just prior to the accident; that it was his purpose to turn south on north Sixteenth avenue; that respondent's car approached the intersection from the south and came to a complete stop, alongside a car parked

to its right; that, at the angle at which he intended to negotiate the turn, he was unable to do so because of insufficient space left him by the two cars which had stopped south of the intersection; that he therefore waited until respondent's car had started again and had proceeded forward; that he then completed the turn, and shortly thereafter heard the crash; and that he thereupon stopped immediately, parked his car, and went back to the scene of the accident. It will be noticed that his testimony harmonized with respondent's testimony relative to the car which she had observed approaching from her left.

We turn now to a discussion of appellant's assignments of error, which may be grouped under three heads: (1) Error in denying appellant's motion for judgment notwithstanding the verdict; (2) error in submitting to the jury, by instructions, the doctrine of last clear chance; and (3) error in permitting the introduction of certain testimony.

██ With reference to motions for judgment notwithstanding the verdict, the rule in this state has been set forth in *Gibson v. Spokane United Railways,* 197 Wash. 58, 84 P. (2d) 349, as follows:

"Such a motion, we have uniformly held, can not be granted unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference from the evidence to justify the verdict. All competent evidence in the record which is favorable to the respondents we must regard as true and must give them the benefit of every favorable inference which may reasonably be drawn from such evidence. Where the minds of reasonable men may differ, the question should be submitted to the jury. If, when so considered, we find there is substantial evidence to sustain the verdict, the judgment must be affirmed."

To the same effect are *Pierce v. Pacific Mutual Life Ins. Co.,* 7 Wn. (2d) 151, 109 P. (2d) 322; *Rieger v.*

*Kirkland,* 7 Wn. (2d) 326, 111 P. (2d) 241; and *Fetterman v. Levitch,* 7 Wn. (2d) 431, 109 P. (2d) 1064.

We have also repeatedly held, upon a challenge to the sufficiency of the plaintiff's evidence, or upon a motion for a nonsuit, that, even though the plaintiff's evidence is in some respects unfavorable to him, he is not bound by the unfavorable part thereof, but is entitled to have his case submitted to the jury on the basis of the evidence which is most favorable to his position. *Harris v. Saunders,* 108 Wash. 195, 182 Pac. 949; *Hahn v. Brickell,* 140 Wash. 412, 249 Pac. 780; *Settles v. Johnson,* 162 Wash. 466, 298 Pac. 690; *Weinman v. Puget Sound Power & Light Co.,* 175 Wash. 73, 26 P. (2d) 395; *Lindberg v. Steele,* 5 Wn. (2d) 54, 104 P. (2d) 940. The motion for judgment notwithstanding the verdict must, *a fortiori,* be tested by the same rule.

Viewed in the light of these rules, there was ample evidence from which the jury could find (1) negligence on the part of appellant, and (2) absence of contributory negligence on the part of respondent. The jury was entitled to find, from the evidence, that appellant, having respondent's car continuously under observation from the time that it was seventy-five feet from the intersection until the moment of impact, and seeing that respondent was not according him the right of way, nevertheless increased his speed, and, without attempting to stop, as he might seasonably have done, or without swerving to his left, as he might also have done, proceeded directly ahead and crashed into the rear right side of respondent's car. The jury was further entitled to find, from the evidence, that respondent did stop before entering the intersection, and that, from the observation made by her, she was justified in believing that she had a fair margin of safety in crossing the intersection.

■ Appellant argues strenuously that, if respondent's testimony with respect to the relative distances covered by the two automobiles in reaching the point of impact, and with respect to the relative speeds at which they approached that point, be accepted as correct, the collision could not possibly have occurred. That may be true, and the trial court recognized that fact, as is indicated by the following observation in its memorandum decision denying appellant's motion for judgment notwithstanding the verdict:

"The court agrees that such testimony, if accepted literally, presents an impossible situation;—in other words, the times and distances of the two cars as given in the plaintiff's testimony could not have brought them to the same point at the same time; and, therefore, such testimony would tend to prove that there was no collision."

But, as the trial court further observed, the fact of the collision was one of the few established facts in the case, while all the testimony with reference to speeds and distances consisted of estimates only. A slight variation in the estimate relative to either, or both, of those elements would be sufficient to account for the collision. Moreover, the jury was not limited, in its findings, to the direct testimony of any one witness. It was free to accept, or reject, any part of the testimony of any witness, whether for respondent or for appellant. Upon that basis, the jury was warranted in finding, from all the evidence, a set of facts which would not only account for the collision, but would also establish it as the result of appellant's negligence alone.

In support of his contention upon this point, appellant relies upon the following cases: *Overaa v. Tacoma Bus Co.,* 168 Wash. 392, 12 P. (2d) 415; *McAllister v. Anderson,* 169 Wash. 14, 13 P. (2d) 36; *Sather v. Blodgett,* 169 Wash. 25, 13 P. (2d) 60; *Rust v.*

*Schlaitzer*, 175 Wash. 331, 27 P. (2d) 571; *Jamieson v. Taylor*, 1 Wn. (2d) 217, 95 P. (2d) 791. None of those cases is controlling of the situation presented by the case at bar. In the *Overaa* case, *supra*, the plaintiff was held guilty of contributory negligence as a matter of law because, in crossing an arterial highway, she failed to yield the right of way to an oncoming bus whose speed she did not know, and because she proceeded to cross in front of the bus without making further observation of its progress.

The facts in the *McAllister* case, *supra*, are sufficiently suggested, and the law of that case is succinctly stated, in a single sentence in the opinion:

"One about to cross such an arterial highway, seeing a car rapidly rounding a curve and heading toward him but two hundred feet away, should instantly stop his car before entering the zone of danger, rather than to attempt to win in a contest for the right of way."

In the *Sather* case, *supra*, plaintiff entered an intersection and turned to his left, across the path of a car approaching from the opposite direction, about fifty or sixty feet away. Plaintiff offered no evidence relative to his knowledge as to the speed of defendant's car, or to indicate that he was in any way deceived by the other driver. We held that under those circumstances plaintiff was guilty of contributory negligence as a matter of law.

In the *Rust* case, *supra*, the defendant approached an arterial highway consisting of two paved strips, with an unpaved strip of ground between them. He stopped at the intersection, then proceeded across the first strip of pavement, and stopped at the unpaved strip. He then started forward again, at a time when plaintiff's car was approaching from the right, on the arterial highway, about eighty feet from the intersection. A collision resulted. The opinion does not disclose the

rate of speed at which plaintiff was traveling. This court held that the defendant there was guilty of contributory negligence as *a matter of fact.*

In the *Jamieson* case, *supra,* the plaintiff, while driving a truck, attempted to make a left-hand turn upon an arterial highway, and was struck by the defendant's automobile, which was coming from the opposite direction. The speed limit upon the highway at the time was fifty miles an hour. At a point thirty-five feet north of the intersection, the plaintiff had observed the defendant's car approaching some distance away, but did not estimate its speed, nor did he take any further notice of it until after his own truck had made a sharp turn to the left, near the center of the intersection, thus bringing the truck suddenly into the path of the oncoming car. It was held that, under those circumstances, the plaintiff was guilty of contributory negligence as a matter of law.

In each of the cases just discussed, the party who was found to be guilty of contributory negligence had proceeded across the path of an oncoming vehicle without estimating the speed of such vehicle and without having, under the circumstances, a fair margin of safety. In the case at bar, respondent did make the required observations, and, according to the verdict, would have had ample time to cross in safety if appellant had operated his car with reasonable care and prudence, under the existing circumstances.

Assuming, however, that the jury may have found that respondent did not stop before entering the intersection, and to that extent was contributorily negligent, the question would then be presented as to whether or not appellant could neverthelss be held liable, upon the theory that he had the last clear chance to avoid the collision. This presents appellant's second, and principal, contention on appeal.

The trial court instructed the jury as follows:

"You are further instructed that if the defendant [appellant] actually saw the automobile of the plaintiff [respondent] in the street ahead of him and should have appreciated the danger, if any, of the situation, but failed to exercise reasonable care to avoid the collision, such failure makes the defendants liable in this action, and you must find for the plaintiffs even though the plaintiff Margaret Moen may also have been guilty of negligence that continued up to the instant of the injury.

"You are further instructed that if the plaintiff was in a position of peril in the street ahead of defendant, and even if the defendant did not actually see the peril, if any, of the plaintiff in time to avoid the injury, but by keeping a reasonably careful lookout, commensurate with the dangerous character of the agency he was driving and the situation then and there existing, should have seen the peril, if any, and appreciated it in time, by the exercise of reasonable care, to have avoided the injury, and failure to escape the injury resulted from his failure to keep that lookout and exercise that care, then and in that event the defendants are liable in this action and you must find for the plaintiffs, although plaintiff Margaret Moen may have been guilty of negligence, providing such negligence of the plaintiff, if any, had culminated in a situation of peril from which she could not by the exercise of reasonable care have extricated herself."

The instruction was clearly correct as to form. *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943; *Leftridge v. Seattle*, 130 Wash. 541, 228 Pac. 302; *Chapin v. Stickel*, 173 Wash. 174, 22 P. (2d) 290; *Smith v. Gamp*, 178 Wash. 451, 35 P. (2d) 40.

Appellant, however, attacks the instruction both as to its form and as to its applicability. He contends, first, that, under the evidence, there was no occasion at all for any instruction upon the doctrine of last clear chance, and that the giving of the instruction opened the door for speculation by the jury as to how the

accident happened. Pointing to the testimony given by the three eyewitnesses, including himself, with reference to speeds, distances, and locations, appellant argues that it is clear that "everything to avert an accident was done." We have already discussed the facts which underlie that contention, and have dwelt upon the conclusions that the jury might reasonably have drawn therefrom. It is therefore unnecessary to say anything further upon that question other than that the jury could properly have found that appellant, by the exercise of reasonable care, could have averted the accident, even though respondent may have been contributorily negligent.

Appellant next contends that, in any event, the first paragraph of the instruction above quoted was inapplicable, for the reason that there was no testimony that he *saw* respondent's perilous situation in time to avoid the collision. We cannot agree with appellant. In our opinion, the evidence, as already outlined, was clearly sufficient to warrant the jury in finding that appellant did see the dangerous condition in time to avert a collision.

Appellant further contends, specifically, that it was error to give the second paragraph of the instruction because there was no evidence that respondent was in a position of peril from which she could not extricate herself. The record does not support appellant's contention. Respondent testified that, when she reached the center of the intersection, she proceeded forward cautiously, and at a slow speed, because there were pedestrians crossing ahead of her, and others who were standing on the corner apparently ready to cross. She further testified that, for the same reason, she could not make a burst of speed in order to get out of appellant's way. While that testimony was contradicted in some respects, it was sufficient to raise an issue of fact

upon that point. The question was therefore one for the jury to determine, as to whether or not respondent had reached, and was in, a position of peril, and as to whether or not, under the circumstances, she could have extricated herself from such perilous position.

Appellant's final contention in connection with the instruction is that the first paragraph thereof did not definitely advise the jury that an "appreciable length of time in which to act must be shown before the doctrine [of last clear chance] can apply." We see no merit in that contention. In the paragraph in question, the court instructed the jury that appellant would be liable if he actually saw respondent's automobile ahead of him in the street and should have appreciated the danger of the situation, but failed to exercise reasonable care to avoid the collision. The exercise of reasonable care necessarily involves the time element, and the jury undoubtedly so understood it.

■ Appellant's final assignment of error is directed against the action of the trial court in permitting respondent to testify that, as she approached the intersection, her lady companion stated: "This is Summitview we are coming to. It is a very bad intersection and be careful." Appellant's sole ground of objection thereto, at the trial, was that the statement was not part of the *res gestae*. The trial court agreed with appellant that the testimony did not come within the *res gestae* rule, but nevertheless admitted it on the theory that respondent had "testimonial knowledge" as to whether or not the statement was made to her, and that the jury had the right to consider whether or not such statement, if made, "had anything to do with her [respondent's] subsequent actions."

The *res gestae* doctrine constitutes an exception to the hearsay rule, and operates to admit evidence which

would otherwise be barred by that rule. Appellant's contention thus resolves itself into a claim that the statement in question was hearsay, and was inadmissible for that reason. Hearsay evidence is that kind of evidence which derives its value, not solely from the credibility of the witness himself, but also, in part, from the veracity and competency of some other person. 1 Jones on Evidence (4th ed.), 559, § 297. The purpose of such evidence, when offered, is to establish the truth of the matter contained in a statement which was made out of court.

In the instant case, for example, if the statement made by respondent's companion had been offered for the purpose of proving the dangerous character of the intersection in question, the testimony would clearly have constituted hearsay. Its introduction would simply have been an attempt to utilize the testimony of one who was not under oath and subject to cross-examination. Such, however, was not the purpose of the testimony relative to the statement made by respondent's companion. The sole purpose of that testimony was merely to establish the fact that respondent had been *warned* that the intersection was a dangerous one. Whether or not the original declarant made a correct statement was immaterial, in so far as its warning effect was concerned, and, hence, the fact that the declarant was not in court was of no moment. The declarant's statement was used as circumstantial evidence only. Respondent, who was under oath and was available for cross-examination, was simply testifying, from her own knowledge, that the statement was made.

"The Hearsay rule forbids merely the use of an extrajudicial utterance as an assertion to evidence the fact asserted. . . . Such a use would be testimonial, *i. e.* we should be asked to believe the fact because Doe asserted it to be true, precisely as we should be

asked to believe Doe's similar assertion if made on the stand. What the Hearsay rule forbids . . . is the use of testimonial evidence—*i. e.* assertions—uttered not under cross-examination. If, then, an utterance can be used as circumstantial evidence, *i. e.* without inferring from it as an assertion to the fact asserted, . . . the Hearsay rule does not oppose any barrier, because it is not applicable." 6 Wigmore on Evidence, 234, § 1788.

The testimony in question was not hearsay, but, on the contrary, was original evidence as to respondent's knowledge of the dangerous condition of the street, such knowledge being a fact which the jury was entitled to take into consideration in determining whether or not respondent had stopped before entering the intersection. *Olson v. Seldovia Salmon Co.,* 88 Wash. 225, 234, 152 Pac. 1033, 1036; *Nelson v. Bjelland,* 1 Wn. (2d) 268, 95 P. (2d) 784, 125 A. L. R. 641; 1 Jones on Evidence (4th ed.), 565, § 300.

The judgment is affirmed.

ROBINSON, C. J., MAIN, BLAKE, and DRIVER, JJ., concur.